IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| DISCOVER FINANCIAL SERVICES LLC,<br>an Illinois limited liability company, and<br>DISCOVER BANK, a Delaware chartered bank,<br><br>                Plaintiffs,<br><br>                v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURG, PA, a<br>Pennsylvania corporation,<br><br>                Defendant. | Case No.: 06 C 4359<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Valdez |

**DISCOVER FINANCIAL SERVICES LLC'S AND DISCOVER BANK'S
LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DUTY TO DEFEND**

**Parties**

1. Plaintiff Discover Financial Services LLC is a limited liability company with its sole member being Novus Credit Services, Inc. Novus is a Delaware corporation with its principal place of business in Riverwoods, Illinois, which is located within the Northern District of Illinois. (Discover Am. Compl., Ex. 1 ¶ 2).

2. Plaintiff Discover Bank is a Delaware chartered bank with its principal place of business in Greenwood, Delaware. (*Id.* ¶ 3). Both Discover plaintiffs are collectively referred to as Discover.

3. Discover is a subsidiary of the firm referred to in the Policy as the named insured "Morgan Stanley Dean Witter & Co." Since late 2001, the Dean Witter name was dropped and the firm became "Morgan Stanley." Morgan Stanley has owned more than 50% of Discover ever since the two companies merged on February 5, 1997. (Weisman Dec., Ex. 2 ¶¶ 2, 3).

4.	Defendant National Union Insurance Company of Pittsburgh, PA ("National Union") is a Pennsylvania corporation with its principal place of business in New York, New York. (Discover Am. Compl., Ex. 1 ¶ 4).

### Jurisdiction and Venue

5.	This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. (*Id.* ¶ 5).

6.	This Court has personal jurisdiction over National Union because National Union actively sells insurance policies in the State of Illinois, including the Northern District, and is licensed to do business by the State of Illinois. (*Id.* ¶ 6).

7.	Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) and (c) in that Discover Financial Services LLC resides in the Northern District, the insured risk is substantially in the Northern District of Illinois, and substantial parts of the events giving rise to this claim occurred within this judicial district, including Discover's advertising systems, which primarily emanate from and are controlled from Riverwoods, Illinois. (*Id.* ¶ 7).

8.	The "advertising injury" coverage at issue looks to the location from which the advertising conduct of the insured emanates. (*Id.*).

### National Union's Umbrella Insurance Policy

9.	On or before October 1, 1998, National Union issued a commercial umbrella insurance policy to Morgan Stanley. (National Union Policy, Ex. 1, Tab A).

10.	National Union issued its policy No. BE 357-88-80 as a renewal of BE 357-12-60, effective October 1, 1998, through October 1, 2001, and extended by endorsement through October 1, 2002 (the "Policy"). (*Id.* at Title Page and Endorsement #11).

11. Discover is an insured under the Policy because it is a subsidiary of Morgan Stanley, which owns more than 50% of Discover. (*Id*. at Endorsement #1; Ex. 2 ¶ 4).

12. The Policy provides, *inter alia,* the following coverage for "advertising injury" claims:

**Insuring Agreements**

**1.    Coverage.**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of . . . **Advertising Injury** that takes place during the Policy Period and is caused by an **occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.
. . . .

**II.    Defense.**

**A.**    We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when . . . (2) damages are sought for . . . **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

**B.**    When we assume the defense of any claim or suit: (1) we will defend any suit against the **Insured** seeking damages on account of . . . **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle a claim as we deem expedient.
. . . .

**IV.    Definitions.**

**A.    Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses: . . . (3) misappropriation of advertising ideas or style of doing business . . . .
. . . .

>	**H.**	**Occurrence** means: . . . (3) as respects **advertising injury**, an offense committed in the course of advertising your goods, products or services that results in **Advertising Injury**.

(*Id*. at pp. 1, 3 and 5).

## Background Regarding the Underlying RAKTL Action

13.	On July 19, 2005, RAKTL filed and served the original complaint in the RAKTL Action naming Discover, among numerous others, as a defendant. (Ex. 1, Tab B).

14.	On December 16, 2005, RAKTL filed and served its First Amended Complaint in the RAKTL Action. (*Id*., Tab C).

15.	RAKTL's Amended Complaint alleges that in the 1990s Ronald A. Katz invented new methods and structures for combining telephone and computer technologies to create an interactive call processing portfolio. (*Id*. ¶¶ 32-33).

16.	The RAKTL Amended Complaint further alleges, in pertinent part, that Plaintiff Katz Technology Licensing is the sole holder of the entire right, title, and interest in the following United States patents:

>	(a)	No. 4,792,968 (entitled "Statistical Analysis System For Use With Public Communication Facility");
>	(b)	No. 4,930,150 (entitled "Telephonic Interface Control System");
>	(c)	No. 5,128,984 (entitled "Telephone Interface Call Processing System With Call Selectivity");
>	(d)	No. 5,351,285 (entitled "Multiple Format Telephonic Interface Control System");
>	(e)	No. 5,684,863 (entitled "Telephonic-Interface Statistical Analysis System");
>	(f)	No. 5,815,551 (entitled "Telephonic-Interface Statistical Analysis System");
>	(g)	No. 5,828,734 (entitled "Telephone Interface Call Processing System With Call Selectivity");
>	(h)	No. 5,898,762 (entitled "Telephonic-Interface Statistical Analysis System");

  (i)  No. 5,917,893 (entitled "Multiple Format Telephonic Interface Control System");

  (j)  No. 5,974,120 (entitled "Telephone Interface Call Processing System With Call Selectivity");

  (k)  No. 6,148,065 (entitled "Telephonic-Interface Statistical Analysis System");

  (l)  No. 6,335,965 (entitled "Voice-Data Telephonic Interface Control System");

  (m)  No. 6,349,134 (entitled "Telephonic-Interface Statistical Analysis System");

  (n)  No. 6,434,223 (entitled "Telephone Interface Call Processing System With Call Selectivity"); and

  (o)  No. 6,678,360 (entitled "Telephonic-Interface Statistical Analysis System")

(*Id.* ¶ 66, hereinafter the "Patents In Suit").

  17.  The RAKTL Amended Complaint further alleges, in pertinent part, that the "Discover Defendants operate telephone systems, including without limitation the Discover and Discover Card automated customer service systems, that allow their customers to perform banking, credit card, and *other function*s over the telephone." (*Id.* ¶ 67, emphasis added).

  18.  Discover does operate automated telephonic systems, including the Discover Bank and Discover Card automated customer services systems. (Ex. 1 ¶ 13).

  19.  Discover does not deny that its accused automated customer services systems perform "other functions," such as advertising and/or promoting Discover's goods and services that customers can purchase (or obtain by redeeming credits) via its accused automated customer service systems. (*Id.*).

  20.  The Amended Complaint alleges that Discover's automated customer service systems infringe the Patents In Suit. (Ex. 1, Tab C, ¶ 68).

21. Discover had no knowledge that using any of its automated customer service systems might constitute a known loss that required reporting under the Policy until it was served with the original complaint in the RAKTL Action. (Ex. 2 ¶ 5).

22. In relevant part, the Patents In Suit read as follows:

    a. Claim 219 of Patent No. 5,828,734 ("the '734 Patent") purports to cover "[a] telephone interface system … wherein said select interactive operating format involves *advertising of a product for sale*" (emphasis added) (Patent No. 5,828,734, Ex. 3);

    b. Claim 72 of Patent No. 5,684,863 ("the '863 Patent") purports to cover "[a] process … wherein said specific operating format is an automated *promotional format* associated with said specific operating format" (emphasis added) (Patent No. 5,684,863, Ex. 4);

    c. Claim 74 of the '863 Patent purports to cover "[a] process … wherein said participation numbers are associated with an automated *promotion of said products*" (emphasis added) (*Id.*);

    d. Claim 86 of the '863 Patent purports to cover "[a] process according to claim 85, wherein said participation numbers are associated with an automated *promotion of said products*" (emphasis added) (*Id.*);

    e. Claim 89 of the '863 Patent purports to cover "[a] process . . . wherein said process is for *automating a promotion*" (emphasis added) (*Id.*);

    f. Claim 118 of the '863 Patent purports to cover "[a] process . . . including the steps of . . . receiving said call data signals . . . dialed by said individual callers to select a specific operating format from a plurality of operating formats or said operations of said interface wherein at least one of said plurality of operating formats includes an automated *promotional format for promoting said products*" (emphasis added) (*Id.*).

6

23.    In its answers to interrogatories, RAKTL alleges that one or more of the Patents In Suit claim the invention of an "advertising activity" or "style of business" as those terms are used in the insurance policy National Union issued to Discover. As RAKTL stated:

> [F]unctions that allow callers to (1) enroll in a "5% cash back" bonus promotions, (2) redeem travel or merchandise awards, (3) make balance transfers and automated payments, (4) try free for 30 days and/or purchase health, credit, or identity protection services, (5) pay credit card balances over the telephone with or without assistance of an account manager, and/or (6) automatically apply funds from a designated bank account against their credit card balances are among the functions which are performed by Discover's automated telephone services and/or systems that infringe claims from one or more of U.S. Patent Nos. 4,792,968, 4,930,150, 5,351,285, 5,684,863, 5,815,551, 5,828,734, 5,974,120, 6,148,065, 6,335,965, and 6,678,360.

(RAKTL's Answer to Interrogatory, Ex. 5, p. 9).

## National Union's Duty To Defend

24.    The Policy requires National Union to defend Discover where a claim or suit against Discover alleges facts potentially constituting an advertising injury that arises solely out of Discover's advertising activities, provided that such advertising activities allegedly involve the misappropriation of another's advertising ideas or style of doing business, and provided further that the advertising injury is not covered by any underlying insurance. (Ex. 1, Tab A, pp. 1, 3 and 5).

25.    After being served with the RAKTL Action, Discover tendered the matter to both of its underlying insurance carriers: Liberty Mutual Insurance Company ("Liberty Mutual") and Federal Insurance Company ("Federal"), both of whom declined to defend Discover pursuant to their respective policies' blanket coverage exclusions for patent infringement claims arising from "bodily injury," "property damage," "advertising injury" or "personal injury." (*See* Liberty Mutual Insurance Company's November 9, 2006, letter to Morgan Stanley denying coverage, Ex.

7

6; Federal Insurance Company's December 21, 2005, and January 25, 2006, letters to Morgan Stanley denying coverage, Ex. 7).

26. On October 28, 2005, Discover tendered the RAKTL Action to National Union and requested that National Union defend and indemnify Discover. (Discover's October 28, 2005, letter to National Union, Ex. 8).

27. For over six months, National Union failed to respond to Discover's October 28, 2005, notice of the RAKTL Action, leaving Discover to defend itself in that Action. (Ex. 1 ¶ 20).

28. On May 4, 2006, Discover met with and handed National Union a letter advising National Union that the Court in the RAKTL Action had ordered a settlement mediation conference on May 10, 2006. (Discover's May 4, 2006, letter to National Union, Ex. 9).

29. In its May 4, 2006, letter to National Union, Discover requested that National Union participate in the settlement mediation conference and meet with Discover to explain National Union's apparent refusal to defend and indemnify Discover. (*Id.*)

30. National Union initially refused to meet with Discover, but relented after Discover's management expressed outrage at National Union's conduct. (Ex. 1 ¶ 21).

31. During their May 4, 2006, meeting, Discover gave National Union additional information and documents concerning the RAKTL Action, RAKTL's document discovery demand letter, RAKTL's allegedly infringed patents, and Discover's "call flow" diagrams illustrating which of its automated phone systems' allegedly infringing functions involve advertising activities. (*Id. ¶* 22; Ex. 9).

32. During their May 4, 2006, meeting, Discover again asked National Union to defend Discover and to participate in the May 10, 2006, settlement mediation in the RATKL

Action. (Ex. 1 ¶ 22). National Union refused these requests, leaving Discover to participate in the May 10, 2006, settlement mediation without its insurer National Union. (*Id.*).

33. The RAKTL Action did not settle at the May 10, 2006, settlement mediation. (*Id.*).

34. On May 11, 2005, Discover received a letter from National Union denying its duty to defend and indemnify Discover. (AIG's May 9, 2006, letter to Discover, Ex. 10).

35. At Discover's urging, Discover met on May 24, 2006, with National Union's claims administrator – AIG Domestic Claims, Inc. ("AIG"). (Ex. 1 ¶ 24).

36. During the parties' May 24, 2006, meeting, Discover asked AIG to reconsider its coverage position. (*Id.*).

37. On June 30, 2006, Discover received a letter from AIG, again declining to defend Discover against the RAKTL Action. (AIG's June 30, 2006 letter to Discover, Ex. 11).

38. Discover has complied with all of its obligations under the Policy. (Ex. 1 ¶ 25).

DATED: December 4, 2006

            **DISCOVER FINANCIAL SERVICES LLC and DISCOVER BANK**

            By: s/Kimball R. Anderson
                One of Their Attorneys

Kimball R. Anderson
Samuel Mendenhall
Giel Stein
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

## CERTIFICATE OF SERVICE

  I hereby certify that on December 4, 2006, I electronically filed Discover Financial Services LLC's and Discover Bank's Local Rule 56.1 Statement of Undisputed Facts in Support of Their Motion For Partial Summary Judgment Regarding Duty to Defend with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Richard Nicolaides
Matthew J. Fink
Daniel I. Graham, Jr.
Bates & Carey LLP
191 North Wacker Drive
Suite 2400
Chicago, Illinois 60606

                <u>s/Samuel Mendenhall</u>

CHI:1731254.1