UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P. | § § § | |
| V. | § § | CIVIL ACTION NO. 5:05-CV-142-DF |
| CITIBANK, N.A., CITIBANK, F.S.B., CITIBANK (WEST), F.S.B., CITIBANK (SOUTH DAKOTA), N.A., CITIBANK USA, N.A., CITICORP INVESTMENT SERVICES, DISCOVER FINANCIAL SERVICES, INC., DISCOVER BANK, T-MOBILE USA, INC., WAL-MART STORES, INC., WAL-MART STORES EAST, L.P., WAL-MART STORES TEXAS, L.P., SAM'S EAST, INC., SAM'S WEST, INC., WAL-MART.COM, INC. | § § § § § § § § § § § § § § § § § | JURY |

## Verification

I, James Tramontana, Assistant Secretary and Counsel of A2D Corporation, the sole general partner of A2D, L.P., which is the sole general partner of Ronald A. Katz Technology Licensing, L.P. ("Katz"), Plaintiff in the above-entitled action, have read the attached **Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Answer and Objections to Interrogatory One from Defendants Discover Financial Services, Inc. and Discover Bank's Amended First Set of Interrogatories** ("Katz's Response"). I have been authorized to make this Verification on behalf of Katz. I declare under penalty of perjury that the factual information contained in Katz's Response is true and correct to the best of my current knowledge, information, and belief.

Executed this ☉day of September, 2006.

_____
James Tramontana, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this the 8th day of September, 2006, a true and correct copy of the foregoing *PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P. 'S ANSWER AND OBJECTIONS TO INTERROGATORY ONE FROM DEFENDANTS DISCOVER FINANCIAL SERVICES, INC. AND DISCOVER BANK'S AMENDED FIRST SET OF INTERROGATORIES* has been served on all counsel of record via electronic mail and first-class mail as listed below:

Matthew J. Moore, Esq.
**Howrey LLP**
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
Fax: (202) 383-6610
Email: moorem@howrey.com

*Attorneys for Defendant Discover et al.*

J. Patrick Elsevier, Ph.D.
**Alston & Bird, LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Fax: (404) 253-8285
Email: pelsevier@alston.com

*Attorneys for Defendant T-Mobile USA, Inc.*

Gregory S. Norrod, Esq.
**Foley & Lardner LLP**
321 North Clark, Suite 2800
Chicago, IL 60610
Fax: (312) 832-4700
Email: gnorrod@foley.com

*Attorneys for Defendant Wal-Mart et al.*

Dated: September 8, 2006

Dawn R. Roelofs

269991 v1/RE

# EXHIBIT 6



Marcia E. Rowell
Chief Examiner
100 Liberty Way
PO Box 1525
Dover NH 03820-1525
Telephone: (603) 749-2600 ext. 32150
Fax: (603) 742-0706

November 9, 2005

Andrew B. Weisman, ARM, CPCU
Executive Director – Risk Management
Morgan Stanley
750 7th Ave, 33rd Fl
New York NY 10019

RECEIVED

NOV 1 4 2005

RISK & INS.
MANAGEMENT DEPT.

RE:   Katz Technology v. Morgan Stanley
     P001-060981-01

Dear Mr. Weisman:

Liberty Mutual has reviewed the complaint filed in the United States District Court for the Eastern District of Texas by Ronald A. Katz Technology Licensing, L.P. (Katz) against numerous defendants including Discover Financial Services and Discover Bank (Discover) alleging patent infringement. Katz alleges Discover infringed and induced others to infringe plaintiff's patents by making using, offering to sell and/or selling automated telephone systems. Based upon our review of the complaint and the CGL policies issued to Morgan Stanley under which Discover is an insured, Liberty Mutual has concluded it has no duty to defend or indemnify Discover in the pending lawsuit.

The complaint is devoid of allegations as to when the alleged infringement took place. However, under federal law, with respect to patent infringement, no recovery is allowed for any infringement committed more than six years prior to the filing of the complaint. Plaintiff may be entitled to recover damages that occurred outside of the Liberty Mutual policy periods. Liberty Mutual declines to provide a defense or indemnification for injury or damage that occurred outside of the effective dates of the Liberty Mutual policies.

Coverage A of the CGL policies afford insurance for "bodily injury" and "property damage" caused by an "occurrence," defined as an accident. The term "bodily injury" is replaced in most of the policy by the term "personal injury." The complaint does not allege either "bodily injury" or "personal injury." "Property damage" is defined in the policies as physical injury to tangible property, or loss of use of tangible property that has not been physically injured. Economic loss does not constitute "property damage." The "bodily injury" or "property damage" must result from an "occurrence." Liberty Mutual declines to provide a defense or indemnification for damage that does not constitute "bodily injury" or "property damage" arising out of an "occurrence."

The insurance typically afforded for "personal and advertising injury" by Coverage B is deleted in all policies by the General Amendatory Endorsement (Occurrence Form). The

endorsement replaces the term "bodily injury" with the term "personal injury" in most parts of the policy, and adds a new definition of "personal injury" which reads as follows:

"Personal injury" means:

a. "Bodily injury", except for "bodily injury" arising out of injury within subdivision b. or c. of this definition;

b. Injury, including consequential "bodily injury", to the feelings or reputation of a natural person; and

c. Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

(1) False arrest, detention or imprisonment;

(2) Malicious prosecution;

(3) Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

(4) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(5) Oral or written publication, in any manner, of material that violates a person's right of privacy.

(6) Emotional distress and humiliation.

Patent infringement is not among the offenses that constitute "personal injury" under this definition. Katz has not alleged "personal injury."

The policies contain an endorsement titled Coverage – Advertising Offense which adds insurance for "advertising injury." "Advertising injury" is defined in the endorsement as follows:

"Advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

(1) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(2) Oral or written publication of material that violates a person's right of privacy;

(3) The use of another's advertising idea in your "advertisement"; or

2

(4) Infringement upon another's copyright, trade dress or slogan in your "advertisement".

"Advertisement" means "a notice that is broadcast or published (in the print, broadcast or electronic media) to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

Plaintiff has alleged patent infringement, which is not among those offenses specifically named in the definition of "advertising injury." Additionally, courts have consistently held that patent infringement does not constitute "advertising injury." Liberty Mutual declines to provide a defense or indemnification for injury or damage that does not constitute "advertising injury."

Endorsement no. 27 to the policy is titled "Customer Injury, Personal and Advertising Injury Endorsement." It states in pertinent part:

Under Coverage, the provision titled Bodily Injury, Property Damage, Advertising Injury and Personal Injury is deleted and replaced with the following:

Bodily injury, Property damage, Advertising Injury, Personal Injury and Customer Injury

Subject to the applicable Limits of Insurance, we will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for:

1. bodily injury or property damage to which this insurance applies caused by an occurrence; or

2. advertising injury, personal injury or customer injury to which this insurance applies caused by an offense.

This endorsement defines "customer injury" as follows:

Customer Injury means injury, other than bodily injury or personal injury arising out of one or more of the acts listed below, other than your advertising activities:

A. malicious prosecution (unless insurance thereof is prohibited by law) when it arises out of, or is directly or indirectly related to:

1. the restructure, termination, transfer or collection of any loan, lease or extension of credit; or

2. the repossession or foreclosure of property which is security for any loan, lease or extension of credit;

B. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons

3

occupy, when the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

D.   oral or written publication of material that violates a person's right of privacy, when alleged, charged or suffered by any customer; or

E.   discrimination (unless insurance thereof is prohibited by law) based upon race, color, religion, sex, age or national origin when alleged, charged or suffered by any customer, unless that customer is:

1.   an applicant for employment;

2.   a present or former employee; or

3.   a prospective employee.

Patent infringement is not among any of the offenses that constitute "customer injury." Additionally, Katz was not a customer of Discover. As was discussed above, patent infringement does not constitute "bodily injury" or "property damage" arising out of an "occurrence" or "personal injury" or "advertising injury." Liberty Mutual declines to provide Discover with a defense or indemnification under the "Customer Injury, Personal and Advertising Injury Endorsement."

Assuming arguendo the claim was to fall within the scope of the insurance afforded under the Customer Injury, Personal and Advertising Injury Endorsement, it would then be excluded by the Intellectual Property Exclusion. This exclusion provides:

This insurance does not apply to bodily injury, property damage, advertising injury, personal injury or customer injury arising out of, or directly or indirectly related to, the actual or alleged publication or utterances of oral or written statements, whether made in advertising or otherwise, which are claimed as an infringement, violation or defense of any of the following rights or laws:

1.   copyright, other than infringement of copyrighted advertising materials;

2.   patent;

3.   trade dress;

4.   trade secrets; or

5.   trademark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

This exclusion serves to exclude any patent infringement claim from the insurance afforded by the Customer Injury, Personal and Advertising Injury Endorsement. Thus, there is no duty to defend or indemnify Discover under the insurance afforded by the Customer Injury, Personal and Advertising Injury Endorsement.

While we have attempted to address all of the coverage considerations related to this claim, Liberty Mutual reserves all rights under applicable law and the policy. This letter should in no way be construed as a waiver or estoppel of any of the possible coverage defenses afforded by the policy or applicable law. Please feel free to contact me if you have any questions.

Sincerely,

Marcia E. Rowell
Chief Examiner

Cc:     Anthony Pisciotta
        Arthur J. Gallagher & Co. of NY, Inc.
        444 Madison Avenue
        21st Floor
        New York, NY 10022-6947

        Valerie West
        Customer Service Manager
        National Sales
        Glastonbury CT

# EXHIBIT 7



# CHUBB GROUP OF INSURANCE COMPANIES

1330 Post Oak Boulevard, Suite 2400, Houston, TX 77056-3031
Phone: (713) 297-4600 • Facsimile: (713) 297-4750

December 21, 2005

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

RECEIVED

FEB 1 7 2006

RISK & INS.
MANAGEMENT DEPT.

Mr. Andrew B. Weisman, ARM, CPCU
Executive Director
Morgan Stanley
750 Seventh Avenue, 33rd Floor
New York, NY 10019

RE:  Insured:        Morgan Stanley Dean Witter Discovery & Co. (Discover Financial
                     Services, Inc., and Discovery Bank)
     Policy No.:     3532-18-73
     Date of Loss:   undetermined
     Claimant:       Ronald A. Katz Technology Licensing
     Company:        Federal Insurance Company (Federal)

     Style of Suit:  *Ronald A. Katz Licensing, L. P.,* filed in the USDC, Eastern District
                     of Texas, Texarkana Div., Civil Action No. 505 CV 142

Dear Mr. Weisman:

We have previously acknowledged receipt of the above referenced petition. After having
completed our review of the complaint and the coverage provided, Federal regrets to advise you
that no coverage will be provided for this matter. The basis for this decision is set forth more
fully below.

Federal provides General Liability coverage for Morgan Stanley Dean Witter, Discovery & Co.
under its policy 3532-18-73 beginning with the 10/1/1997 to 10/1/1998 policy term, with
renewal for the policy term of 10/1/1998 to 10/1/2000. We were asked to review coverage from
10/1/1997 through 10/1/2001 but our records indicate that this policy expired on 10/1/2000. The
limits of liability are as follows:

| | |
|---|---|
| $3,000,000 | General Aggregate Limit |
| $1,000,000 | Product/Completed Operations Aggregate Limit |
| $1,000,000 | Each Occurrence Limit |
| $1,000,000 | Advertising Injury and Personal Injury Aggregate Limit |

Morgan Stanley Dean Witter, Discovery & Co.
December 21, 2005
Page 2

The Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement alleges that the "Discovery defendants" (Discover Financial Services, Inc. and Discover Bank) operated automated telephone systems, which allowed customers and merchants to perform banking, credit card, and/or merchant-related functions over the telephone, and directly and contributorily infringed, and induced others to infringe on the plaintiffs patents. It also alleges willful infringement. The plaintiff seeks a judgment, permanent injunction against the Discover defendants, an accounting for damages, a judgment that the infringement was willful and asks for trebling of damages.

Excerpts of certain provisions contained in the above referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that you may have it available as you review the explanations provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy, and not merely the excerpts set forth in the Appendix.

We direct your attention to the Insuring Agreement of your Customarq Insurance Policy containing General Liability coverage under policy number 3532-18-73. The policy form in effect is General Liability Form 17-02-3080 (Ed. 4/95). The insuring agreement is cited in the Appendix for your review.

Next, please refer to the Definitions section of your policy which defines **Advertising Injury, Bodily Injury, Personal Injury, Property Damage, and Occurrence.** Please review these definitions which you will also find in the Appendix accompanying this letter.

We also direct your attention to the Exclusions sections of your policy. In the General Liability Form 17-02-3080 (Ed. 4/95), we refer you to the **Intellectual Property** exclusion.

It is the position of Federal that there is no coverage under the general liability policy as the allegations would not fall within the grant of coverage as they do not meet the policy definition of **bodily injury** or **property damage** caused by an **occurrence,** or **advertising injury** or **personal injury** under the policies. Alternatively, the **Intellectual Property** exclusion would coverage. Please refer to the Appendix for complete citation of these definitions and exclusion.

In view of the foregoing, Federal will neither defend nor indemnify Discover Financial Services, Inc., and Discovery Bank, and any settlement or judgment obtained by the plaintiffs predicated upon allegations that fall outside the insuring agreement, or within the exclusionary language identified above, shall be the responsibility of Discover Financial Services, Inc., and Discovery Bank and not that of Federal. If you have additional facts that you feel would alter our position, or if an amended complaint is received, we would be pleased to give this matter further consideration.

Morgan Stanley Dean Witter, Discovery & Co.
December 21, 2005
Page 3

Federal reserves the right under the policy and applicable law to cite additional applicable policy provisions as may be appropriate. The foregoing declination is premised upon allegations set forth in the Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement and the terms and conditions of the policy. By limiting policy references to those cited Federal does not waive any other policy provisions. The insurance policy in its entirety is incorporated by reference as if it had been stated in full.

You may seek the advice of your own lawyer, at your own expense, related to these coverage issues.

If you have any questions upon receipt of this letter, please feel free to give me a call.

Sincerely,

Diane Wood
Litigation Examiner
Phone: (713) 297-4738

cc:    Marsh USA, Inc.
      1166 Avenue of the Americans
      New York, NY 10036

      Anthony Pisciotta
      Area Vice President – Claims
      Arthur J. Gallagher – Risk Management Services
      444 Madison Avenue, 20th Floor
      New York, NY 10022-6947
      By mail and email at : anthony_pisciotta@ajg.com

Morgan Stanley Dean Witter, Discovery & Co.
December 21, 2005
Page 4

## APPENDIX
Great Northern Insurance Company
Policy 3532-18-73
Morgan Stanley Dean Witter, Discovery & Co.
Form 17-02-3080 (Ed. 4/95)

**Coverage**

**Bodily Injury, Property Damage, Advertising Injury and Personal Injury**

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:

- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or
- **advertising injury** or **personal injury** to which this insurance applies caused by an offense.

This includes **bodily injury, property damage, advertising injury** or **personal injury** involving:

- automated teller machines;
- **foreclosed property;**
- property in any trust, guardianship or estate for which you are acting in a fiduciary or representative capacity; and
- property which you own and lease to others, when specific insurance, which would customarily protect your interest and which you require your lessees to carry, is non-existent, invalid, insufficient or uncollectible.

This insurance applies to:

- **bodily injury** or **property damage** which occurs during the policy period; and
- **advertising injury** or **personal injury** caused by an offense committed during the policy period.

Damages for **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury**.

Morgan Stanley Dean Witter, Discovery & Co.
December 21, 2005
Page 5

**Definitions**

**Advertising** means any advertisement, publicity article, broadcast or telecast.

**Advertising injury** means injury, other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** your goods,
products or services:

- oral or written publication of material that slanders or libels a person or organization;
- oral or written publication of advertising material that violates a person's right of privacy; or
- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Personal injury** means injury, other than **bodily injury**, arising out of one or more of the acts listed below, other than your **advertising** activities:

A. false arrest, detention or imprisonment;
B. malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

    1. the restructure, termination, transfer or collection of any loan, lease or extension of credit; or
    2. the repossession or foreclosure of property which is security for any loan, lease or extension of credit;

C. wrongful eviction from, wrongful entry into, or invasion of the right of private

Morgan Stanley Dean Witter, Discovery & Co.
December 21, 2005
Page 6

occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for who you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

D.      oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any **customer**;

E.      oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any **customer**; or

F.      discrimination, (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age, or national origin, except when alleged, charged or suffered by any:

     1.      applicant for employment;
     2.      present or former **employee**;
     3.      prospective **employee**; or
     4.      **customer**.

**Property damage** means:

physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Morgan Stanley Dean Witter, Discovery & Co.
December 21, 2005
Page 7

## Exclusions

### Policy Exclusions

#### Intellectual Property

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of, or directly or indirectly related to, the actual or alleged publication or utterances of oral or written statements, whether made in **advertising** or otherwise, which are claimed as an infringement, violation or defense of any of the following rights or laws:

- copyright, other than infringement of copyrighted advertising materials;
- patent;
- trade dress;
- trade secrets; or
- trademark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.



# CHUBB GROUP OF INSURANCE COMPANIES

1330 Post Oak Boulevard, Suite 2400, Houston, TX 77056-3031
Phone: (713) 297-4600 • Facsimile: (713) 297-4750

January 25, 2006

**RECEIVED**

FEB – 1 2006

RISK & INS.
MANAGEMENT DEPT.

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Mr. Andrew B. Weisman, ARM, CPCU
Executive Director
Morgan Stanley
750 Seventh Avenue, 33rd Floor
New York, NY 11019
By Mail and Email at Andrew.Weisman@morganstanley.com

RE: Insured: Morgan Stanley Dean Witter Discovery & Co. (Discover Financial Services, Inc., and Discovery Bank)
Policy No.: 7318-04-79
Date of Loss: undetermined
Claimant: Ronald A. Katz Technology Licensing
Company: Federal Insurance Company (Federal)

Style of Suit: *Ronald A. Katz Technology Licensing, L. P. v. Citibank N.A., et al,* filed in the USDC, Eastern District of Texas, Texarkana Div., Civil Action No. 505 CV 142

Dear Mr. Weisman:

We have previously sent our coverage position as to the above referenced petition under policy 3532-18-73. We have also been asked to address coverage under policy 7318-04-79 for this matter. After having completed our review of the complaint and the coverage provided under policy 7318-04-79, Federal regrets to advise you that there is no coverage. The basis for this decision is set forth more fully below.

Federal provides Liability Insurance for Morgan Stanley Dean Witter & Co. under its policy 7318-04-79 for effective dates of 10/1/2000 to 10/1/2001. The limits of liability are as follows:

| | |
|---|---|
| $1,000,000 | Products/Completed Operations Aggregate Limit |
| $3,000,000 | Bodily Injury and Property Damage Aggregate Limit |
| $3,000,000 | Advertising and Personal Injury Aggregate |
| $3,000,000 | Customer Injury Aggregate |
| $1,000,000 | Each Occurrence Limit |
| $1,000,000 | Advertising Injury and Personal Injury Limit |
| $1,000,000 | Customer Injury Limit |

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 2

The policy contains a Named Insured Endorsement which reads as follows:

**Named Insured**

The Named Insured is amended to read as follows:

Morgan Stanley and each and every subsidiary and controlled company whether a partnership or corporation, individual or other entity, whether directly or indirectly owned and/or any other party in interest that is required by contract to be named, now existing or hereafter acquired or constituted.

However, Morstan Development Company and other Insureds covered under Policy No. 7318-04-53 are not Insureds in any manner under this policy except as respects liability arising out of Morgan Stanly Dean Witter & Co.'s use of premises located at 1221 Avenue of the Americas, New York, NY 10020.

To recap again, the Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement alleges that the "Discovery defendants" (Discover Financial Services, Inc. and Discover Bank) operated automated telephone systems, which allowed customers and merchants to perform banking, credit card, and/or merchant-related functions over the telephone, and directly and contributorily infringed, and induced others to infringe on the plaintiffs patents. It also alleges willful infringement. The plaintiff seeks a judgment, permanent injunction against the Discover defendants, an accounting for damages, a judgment that the infringement was willful and asks for trebling of damages.

Excerpts of certain provisions contained in the above referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that you may have it available as you review the explanations provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy, and not merely the excerpts set forth in the Appendix.

We direct your attention to the Insuring Agreement in the General Liability coverage under policy number 7318-04-79. The policy form in effect is General Liability Form 17-02-3080 (Ed. 4/95). The insuring agreement, provided under the Customer Injury Endorsement Form 17-02-3335 (Ed. 2-98), is cited in the Appendix for your review.

There is also an endorsement to the policy under Form 80-02-2373 (Ed. 4-94) for **Performance of Services** coverage. This is a Claims Made coverage, which provides that "coverage applies only to claims first made against the Insured during the policy period." The policy period is

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 3

10/1/2000 to 10/1/2001. I have also included a copy of the insuring agreement and terms for the Performance of Service coverage in the Appendix to the letter.

First, please refer to the Definitions section of your General Liability which defines **Advertising Injury, Bodily Injury, Customer Injury, Personal Injury, Property Damage,** and **Occurrence.** Please review these definitions which you will also find in the Appendix accompanying this letter. We also direct your attention to the Exclusions sections of your General Liability coverage. Under the General Liability Customer Injury Endorsement Form 17-02-3335 (Ed. 2-98), please refer to the **Intellectual Property** exclusion.

It is the position of Federal that there is no coverage under the General Liability coverage as the allegations would not fall within the grant of coverage as they do not meet the definition of **advertising injury, bodily injury, customer Injury, occurrence, personal injury** or **personal injury** under the General Liability coverage. Alternatively, the **Intellectual Property** exclusion would exclude coverage. Since we do not know when the alleged conduct occurred, the **Prior Acts** exclusion may also apply. Please refer to the Appendix for complete citation of these definitions and exclusions.

As to the **Performance of Service** coverage, please refer to the Definition of **Performance of Services** which is set forth in the Appendix. It is our position that the claims set forth do not constitute claims "arising out of a negligent act, error or omission or a series of negligent acts, error or omissions to which this insurance applies in the **performance of services**", since the allegations do not relate to services performed by any lawyer, insurance advisor, paralegal, architect, engineer, accountant or notary public employed ...by the named insured ..." Further, as stated above, the coverage is Claims Made coverage and the claims were not made within the policy period of 10/1/2000 to 10/1/2001. The **Unfair Business Practices** exclusion would also apply.

In view of the foregoing, Federal will neither defend nor indemnify Discover Financial Services, Inc., and Discovery Bank, and any settlement or judgment obtained by the plaintiffs predicated upon allegations that fall outside the insuring agreement, or within the exclusionary language identified above, shall be the responsibility of Discover Financial Services, Inc., and Discovery Bank and not that of Federal. If you have additional facts that you feel would alter our position, or if an amended complaint is received, we would be pleased to give this matter further consideration.

Federal reserves the right under the policy and applicable law to cite additional applicable policy provisions as may be appropriate. The foregoing declination is premised upon allegations set forth in the Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement and the terms and conditions of the policy. By limiting policy references to those

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 4

cited Federal does not waive any other policy provisions. The insurance policy in its entirety is incorporated by reference as if it had been stated in full.

You may seek the advice of your own lawyer, at your own expense, related to these coverage issues.

If you have any questions upon receipt of this letter, please feel free to give me a call.

Sincerely,

Diane Wood
Litigation Examiner
Phone: (713) 297-4738

cc:     Anthony Pisciotta
        Area Vice President – Claims
        Arthur J. Gallagher – Risk Management Services
        444 Madison Avenue, 20th Floor
        New York, NY 10022-6947
        By mail and email at : anthony_pisciotta@ajg.com

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 5

## APPENDIX
Great Northern Insurance Company
Policy 3532-18-73
Morgan Stanley Dean Witter, Discovery & Co.
General Liability Form 17-02-3080 (Ed. 4/95)

**Coverage** (Amended per Customer Injury endorsement under 17-02-3335 [Ed. 2-98])

**Bodily Injury, Property Damage, Advertising Injury and Personal Injury**

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** for:
- **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**; or
- **advertising injury, personal injury** or **customer injury** to which this insurance applies caused by an offense.

This includes **bodily injury, property damage, advertising injury, personal injury** or **customer injury** involving:

- automated teller machines;
- **foreclosed property;**
- property in any trust, guardianship or estate for which you are acting in a fiduciary or representative capacity; and
- property which you own and lease to others, when specific insurance, which would customarily protect your interest and which you require your lessees to carry, is non-existent, invalid, insufficient or uncollectible.

This insurance applies to:
- **bodily injury** or **property damage** which occurs during the policy period; and
- **advertising injury, personal injury** or **customer injury** caused by an offense committed during the policy period.

Damages for **bodily injury** include damages claimed by any person or organization for care or loss of services resulting at any time from the **bodily injury**.

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 6

## Definitions

**Advertising** means any advertisement, publicity article, broadcast or telecast.

Advertising Injury (amended per endorsement 80-02-2373 [4-94])

Under Definitions, Advertising Injury, is deleted and replaced with the following:

**Advertising injury** means injury, other than **bodily injury** or **personal injury**, arising out of one or more of the following offenses committed in the course of **advertising** your goods, products or services:

- oral or written publication of material that slanders or libels a person or organization;
- oral or written publication of advertising material that violates a person's right of privacy; or
- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.
- use of another's advertising idea in your advertisement.

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

**Customer injury** (under endorsement 17-02-3335 [Ed. 2-98]) means injury, other than **bodily injury** or **personal injury**, arising out of one or more of the acts listed below, other than your advertising activities:

A.    malicious prosecution (unless insurance thereof is prohibited by law) when it arises out of, or is directly or indirectly related to:
    1.    the restructure, termination, transfer or collection of any loan, lease or extension of credit; or
    2.    the repossession or foreclosure of property which is security for any loan, lease or extension of credit;

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 7

    B.     the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, when the person or persons are mortgagors of yours or of anyone for whom you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

    C.     oral or written publication of material that slanders or libels a person or organization, when alleged, charged or suffered by any **customer**;

    D.     oral or written publication of material that violates a person's right of privacy, when alleged, charged or suffered by any customer; or

    E.     discrimination(unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin when alleged, charged or suffered by any **customer**, unless that **customer** is:
          1.     an applicant for employment;
          2.     a present or former **employee**; or
          3.     a prospective **employee**.

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Personal injury** means injury, other than **bodily injury**, arising out of one or more of the acts listed below, other than your **advertising** activities:

    A.     false arrest, detention or imprisonment;
    B.     malicious prosecution (unless insurance thereof is prohibited by law), except when it arises out of, or is directly or indirectly related to:

          1.     the restructure, termination, transfer or collection of any loan, lease or extension of credit; or
          2.     the repossession or foreclosure of property which is security for any loan, lease or extension of credit;

    C.     wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, unless the person or persons are mortgagors of yours or of anyone for who you are servicing mortgages, by or on behalf of you, its owner, landlord or lessor;

    D.     oral or written publication of material that slanders or libels a person or organization, except when alleged, charged or suffered by any **customer**;

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 8

    E.     oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any **customer**; or

    F.     discrimination, (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age, or national origin, except when alleged, charged or suffered by any:

          1.     applicant for employment;

          2.     present or former **employee**;

          3.     prospective **employee**; or

          4.     **customer**.

**Property damage** means:

physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 9

## Exclusions

### Advertising Injury/Personal Injury Exclusions

**Prior Acts** (Amended per endorsement 17-02-3335 [Ed. 2-98])

This insurance does not apply to **advertising injury, personal injury,** or **customer injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### Policy Exclusions

**Intellectual Property** (Amended per endorsement 17-02-3335 [Ed. 2-98])

This insurance does not apply to **bodily injury, property damage, advertising injury, personal injury** or **customer injury** arising out of, or directly or indirectly related to, the actual or alleged publication or utterances of oral or written statements, whether made in **advertising** or otherwise, which are claimed as an infringement, violation or defense of any of the following rights or laws:

- copyright, other than infringement of copyrighted advertising materials;
- patent;
- trade dress;
- trade secrets; or
- trademark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 10

Great Northern Insurance Company
Policy 3532-18-73
Morgan Stanley Dean Witter, Discovery & Co.
Performance of Services Contract Form 80-02-2373 (Ed. 4/94)

## Coverage

Subject to the applicable Limits of Insurance, we will pay damages the **insured** becomes legally obligated to pay for any claim arising out of a negligent act, error or omission or a series of negligent acts, errors or omission to which this insurance applies in the **performance of services.**

This insurance applies to a negligent act, error or omission only if a **claim** is first made against any insured during the policy period.

This insurance applies to a negligent act, error or omission which:

- occurred prior to the Retroactive Date stated in the Declarations of this insurance;
- occurred on or between the Retroactive Date stated in the Declarations of this insurance and the last day of the policy period stated in the Declaration of this insurance if on the effective date of this insurance, the insured had knowledge of or should have known of any circumstances which might have resulted in a claim; or
- occurs after the policy period stated in the Declaration of this insurance.

For purposes of this insurance:

- a **claim** by a person or organization will be deemed to have been made when notice of such **claim** is received and recorded by an insured, our licensed agent, or by us, whichever comes first; and
- all **claims** for damages by the same person or organization as a result of negligent act, error or omission will be deemed to have made at the time the first of those **claims** is made against any **insured.**

Morgan Stanley Dean Witter, Discovery & Co.
January 25, 2006
Page 11

Definitions

**Performance of Services**

Under Definitions, Performance of Services is deleted and replaced with the following:

**Performance of services** means the services performed by any lawyer, insurance advisor, paralegal, architect, engineer, accountant or notary public employed on a salaried or commission basis as a professional by the named **insured** and arising out of the performance of the respective professional services for the named **insured**.

**Exclusions**

### Unfair Business Practices

The insurance does not apply to any **claim** or **suit** based upon allegations or plagiarism, infringement of copyright, trademark or patent or arising out of unfair business practices.

# EXHIBIT 8

 Arthur J. Gallagher - Inc. Risk Management Services

# Summons and Complaint Fax & Mail Transmittal

No. of Pages:including this cover 23

Date:October 28th, 2005

To:         Mike Skura-Coverage unit
Company:    AIU/AIG Insurance
Phone No.:  Mike Skura-tel#212-458-5742
Fax No.:    Fax: 212-458-5679
Address:    Mailing address: 175 Water Street-22nd floor, New York, NY 10038

From:       Tony Pisciotta- Claims VP- Arthur J. Gallagher & Co. of New York, Inc.
            Tel: 212-994-7043.

Re:    Our Insured:        Discover Financial Services Inc. and Discover Bank
                           (Morgan Stanely subsidiaries)
       Policy Number:      Any and all policies from effective from 1988 to present
       Claimant:           Ronald A. Katz Technology Licensing L.P.
       Date of Loss:       N/A
       Insured Driver:     N/A
       Location of loss:
       Line of Coverage:   General Liability

       Case Caption:       Ronald A. Katz Technology Licensing, L.P. vs Citibank, N.A. ,
                           et al
       Carrier claim No.   To be provided

Dear Mike:

The following is a copy of a United States District Court, Eastern District of Texas, Texarkana Division Civil Action numbered 505CV 142. Pursuant to this matter we would like to keep an open dialog of discussion while the coverage opportunities are explored.

We wish to place you on notice of the above captioned lawsuit which involves our clients Discover Financial Services Inc. and Discover Bank subsidiaries (Morgan Stanley) among the several named defendants.

Please be advised that our above referenced client has retained the defense services of Tyrone R. Childress, Esq. of The Howrey, LLP law firm of Los Angeles, CA to defend their interests.

We look to you to visit any and all coverage opportunities for any and all AIU/AIG Insurance policies effective from 1988 to present. We feel that the exposure period begins from September 1988 to present. Please include the following policies for your review:

Arthur J. Gallagher - Inc. Risk Management Services

BE3571260 effective 10-1-97 to 10-1-98
BE3578880 effective 10-1-98 to 10-1-02
BE2195452 effective 10-1-02 to 10-1-03
BE2977817 effective 10-1-03 to 10-1-04

Please take whatever steps are necessary to defend & protect the interests of Discover Financial Services Inc. and Discover Bank subsidiaries. (Morgan Stanley).

Please acknowledge receipt of suit and provide any communications to Tony Pisciotta (Area V.P.) at Arthur J. Gallagher and Andrew Weisman (Executive Director) at Morgan Stanley.

Sincerely,

Anthony Pisciotta
Area Vice President -Claims
_____
Arthur J. Gallagher –Risk Management Services
444 Madison Avenue
20th Floor
New York, NY 10022-6947
Voice: 212-994-7043
FAX: 212-994-7021
Email: anthony_pisciotta@ajg.com

CC:    Andrew B. Weisman, ARM, CPCU –Executive Director-Morgan Stanley
       (Tel: 212-762-4131/email: Andrew.Weisman@morganstanley.com

This message is intended for the individual or entity to which it is addressed and may contain information which is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, he or she is hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If this communication is received in error, please notify sender immediately by telephone.

# EXHIBIT 9

2500 Lake Cook Road
Riverwoods, IL 60015

# Morgan Stanley

May 4, 2006

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by counsel is not a waiver of the privilege as to any other
party. The insurer must maintain this information in confidence.

### VIA HAND DELIVERY

Mike Skura, Coverage Unit
AIG INSURANCE
175 Water Street, 22nd Floor
New York, NY 10038

Re:   *Discover Financial Services & Discover Bank advs. Ronald A. Katz*
*Technology Licensing, L.P. U.S.D.C. (E.D.TX, Texarkana Div.),*
*Civil Action No. 505 CV 142*

- **National Union Fire Insurance Company of Pittsburgh, PA Umbrella Policy No.**
**No. BE 357-88-80 and Others Issued to Morgan Stanley**

- **Further Notice of Claim and Additional Information, Requesting Defense**

Dear Mr. Skura:

Discover Financial Services, Inc., now known as Discover Financial Services LLC, and
Discover Bank (collectively "Discover") are subsidiaries and related entities of Morgan Stanley
and are insureds under the above policies. As you were informed last October, the Discover
entities have been sued in a lawsuit styled as *Ronald A. Katz Technology Licensing, L.P. v.*
*Citibank N.A., et al.*, case number 505-CV-00142, pending in the United States District Court
for the Eastern District of Texas, Texarkana Division (the "*RAKTL* Action").

We wish to provide you additional and updated notice about that lawsuit and to again
request that National Union provide a defense for the case as it is obligated to do under the
policies. We are contacting you because National Union Fire Insurance Company of Pittsburgh,
PA ("National Union") has instructed us and our broker to provide claim information to you
rather than to anyone at National Union's offices. If we should also be contacting someone else,
please advise us immediately and forward this letter to the proper person.

10524-001-5/3/2006-153185.6

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 2

Discover previously notified National Union about the *RAKTL* Action with its October 28, 2005 letter to you referencing, among others, the above National Union policy. A copy of that letter and a copy of that policy is enclosed for your convenience. With our October 28th letter to you we provided National Union with a copy of the complaint filed in the suit. But no response to the notice has been received in over six months.

We also want to advise that the judge in the RAKTL Action has ordered the parties to participate in mediation in an effort to settle the dispute. That mediation is scheduled to be conducted in Dallas, Texas on May 10, 2006. Obviously, we invite and urge National Union to participate in discussions regarding mediation strategy. Because this mediation will occur very soon, it is critical that National Union advise us immediately whether it will provide a defense in this case, whether it will participate in discussions regarding the mediation and whether it will assist us in settling this claim. Please contact me to advise whether National Union will provide input and discuss strategy regarding the mediation and my office will provide information on location and time

Our primary insurers, Federal Insurance Company (10/01/98 - 10/01/01) and Liberty Mutual Insurance Company (10/01/01 - 10/01/05), have denied a defense of this suit asserting that the suit is not covered by the insurance underlying the above National Union policy. We enclose copies of two denial letters from Federal and a denial letter from Liberty Mutual. As you know National Union is required, under the defense drop down provision of the umbrella policy,[1] to provide a defense under its policy when the underlying carrier denies coverage, whether or not that denial is wrongful.[2]

Because National Union failed to respond to the notice of this suit and because it was essential to avoid a default judgment, Discover retained defense counsel for the defense of the RAKTL Action. Howrey LLP continues to be Discover's defense counsel in this case. Discover is entitled to reimbursement by National Union of its defense expenses.

In the underlying suit RAKTL asserted against several parties claims labeled as patent infringement. As to Discover, RAKTL asserted originally that fourteen patents were infringed by, *inter alia,* Discover's "use" and "operation [of] automated telephone systems, including . . . the Discover Bank and Discover Card automated customer service systems that allow their customers to perform banking, credit card, and other functions over the telephone." On December 16, 2005 RAKTL filed its First Amended Complaint in the *RAKTL* Action. A copy of

---

[1] National Union policy # BE 357 88 80 "**II. Defense. A.** *We shall have the right and duty to defend* any claim or suit seeking damages covered by the terms and conditions of this policy when . . . (2) damages are sought for . . . *Advertising Injury covered by this policy but not covered by any underlying insurance* listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**" (Italics added.)

[2] *Hocker v. New Hampshire Ins. Co.,* 922 F.2d 1476, 1482 (10th Cir. (Wyo.) 1991).

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 3

the First Amended Complaint in the *RAKTL* Action is enclosed. The principal difference between the original and the first amended complaints is the addition of another patent allegedly infringed by Discover and the elimination of some language relating to Discover's merchant services. We also provide you here with copies of the fifteen U.S. patents alleged by RAKTL to be infringed by Discover.

A review of the patents shows them to be generally directed to apparatus and methods for using telephone systems interrelated with computers, computerized telephony or automated telephone systems. Specifically, many of the claims describe advertising activities conducted through the use of these automated telephone systems. RAKTL alleges a relationship between its infringement claims and Discover's use of an automated telephone system to offer goods and services to its customers where that use amounts to advertising activity. Discover's advertising use of its "automated telephone systems" allegedly infringes Katz' patents that claim the invention of advertising techniques. The injury of patent infringement is related to Discover's alleged taking and use of advertising techniques.

We list here some examples of RAKTL's asserted patent claims that relate to advertising activities. These examples of claim interpretations and their possible application to Discover's computerized telephone system are only *potential* interpretations and applications that may be argued by RAKTL in the course of this case. Discover does not advocate these particular interpretations and applications and reserves the right to argue for alternative interpretations or applications in defense of these RAKTL claims. But in order to assist your understanding of the potential for coverage under our policy, we provide some possible interpretations of the patent claims that are asserted against Discover.

You should know that patent claim interpretation or "construction" is a matter of law following a "Markman hearing." [3] The proper judicial construction of a claim and its terms is from the viewpoint of a person of ordinary skill in the field of the invention; the court must determine how such a person would understand a claim in the context of the particular technology and the description in the patent specification, with due reference to the prosecution history.[4]

No Markman hearing has been held but will be held later in this case. The parties are in the process of claim construction. Under the district court's rules, we still wait to receive RAKTL's complete discovery responses and its arguments on claim construction. Then our defense counsel must meet and confer with RAKTL's counsel on claim construction before submitting various filings to the court that will lead to a Markman hearing. Even after that

---

[3] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed.Cir.1995), aff'd,517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).
[4] *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir.2005) (en banc).

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 4

hearing and the judge has construed the claims, the parties can challenge the claim construction in the appellate court which decides claim construction *de novo*. So claim construction, as an important part of the resolution of this lawsuit, remains uncertain for the life of the lawsuit. So we can only discuss possibilities.

In any event, Discover's defense counsel are still reviewing the claims so the comments here only reflect one potential interpretation of the claims that RAKTL may assert. As you know, an insurer's duty to defend a lawsuit is based on the potential that allegations are within policy coverage so we must necessarily speculate about what may occur in the future in this case.

In addition, the references to Discover's accused activity are provided here only as illustrative examples that have been suggested by RAKTL's pleadings, its discovery demands, etc. The allegedly infringing use of computerized telephony that RAKTL is or may assert against Discover is referenced to explain what RAKTL's allegations may mean. Discover certainly denies that it has engaged in any activity that would infringe a valid RAKTL patent. But the National Union policy duty to defend is triggered by allegations only and not by facts as may be established later in the case. The duty to defend exists even where a plaintiff's allegations are false, frivolous and groundless. Discover will continue to vigorously defend against all allegations of infringement.

One example of the patents that RAKTL alleges Discover infringes is U.S. No. 5,898,762 issued to Katz April 27, 1999, entitled "Telephonic-interface statistical analysis system." RAKTL may assert that the `762 patent is directed to a computerized telephone answering system used as a "mail order facility" that receives calls from customers, advertises items available to order, and then executes orders for goods and services. The patent describes an automated system used to inform customers about items available for ordering and thus makes statements in connection with the solicitation of business and in connection with the widespread distribution of promotional material to the public at large (i.e., it advertises products to callers). Two representative sets of claims from that patent specifically describe advertising techniques. The first set of these claims is directed to an apparatus or structure for a mail-order facility.

Claims 25, 26, 27, and 35 (incorporating the elements of claim 17) of the Katz `762 patent appear to be directed to a telephone mail-order computer system that advertises available merchandise ("wherein data signals include signals indicative of merchandise order data . . . an item number [and] further data related to said item number"). This language appears to describe recorded advertising messages about available merchandise. These claims describe a computerized telephone system used to receive telephone calls, select an appropriate "call flow" based on which telephone number is called, identify the caller, verify the caller's credit, advertise products, and preferably take and process an order. Optionally, the call can be transferred to a

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 5

live operator. This Katz patent is alleged to cover the "1-800 Discover" telephone system by which Discover advertises and sells various goods and services.

Some elements, identified as elements of Claim 17, are the generic parts of a claimed computerized telephony "structure." But the added elements from claims 25, 26, 27, and 35 appear to specifically require, for infringement, providing "signals" or information about "merchandise" in order to solicit sales. These are advertising components of the invention. RAKTL is therefore asserting that advertising with Discover's automated telephone system potentially infringes claims 25, 26, 27, and 35.

Specifically the mail-order system of claim 25 requires "an analysis control system according to claim 17, wherein said answer data signals include signals indicative of merchandise order data." A potential plain English understanding of this would be the call-in mail-order computer system (described in Claim 17) providing "merchandise order data" or merchandise advertising. Proving advertising would be a required element to prove infringement.

Claim 26 requires "an analysis control system according to claim 25, wherein said merchandise order data is indicative of an item number." This adds the element of including an item number in the course of the advertising. Claim 27 additionally requires "an analysis control system according to claim 26, wherein said merchandise order data is indicative of further data related to said item number." This appears to add the element of providing more detailed information about items available for mail order on the system, a merchandise advertising message.

An additional element is added by claim 35, "an analysis control system according to claim 17, wherein said communication facility further provides called terminal DNIS signals to identify a specific format from a plurality of formats." In plain English this added claim element appears to call for the system using a long distance carrier's Dialed Number Identification Service to identify the specific toll free number on which the customer is calling so as to select the correct computer response call flow program format including relevant advertising messages.

Infringement of claims 25, 26, 27, or 35 of the `762 patent arguably can only be accomplished by advertising activity. These claims then define ideas for advertising or soliciting business or a technique of advertising or ideas about advertising. The chart below identifies the language of these claims together with a potential interpretation of the claim language that RAKTL may advance (although Discover will not agree with it).

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 6

| U.S. No. 5,898,762 CLAIM-ELEMENT LANGUAGE | POTENTIAL INTERPRETATION OF ELEMENT |
|---|---|
| 25 An analysis control system according to claim 17, wherein said **answer data signals include signals indicative of merchandise order data** | *Call in mail-order computer system providing "merchandise order data" (i.e., merchandise advertising)* |
| 26 An analysis control system according to claim 25, wherein said **merchandise order data is indicative of an item number** | (As an optional feature) *Merchandise advertising includes item number(s)* |
| 27 An analysis control system according to claim 26, wherein said **merchandise order data is indicative of further data related to said item number** | (As an optional feature) *merchandise advertising message includes additional information about items* |
| 35 An analysis control system according to claim 17, wherein said communication facility further provides called terminal DNIS signals to identify a specific format from a plurality of formats | (As an optional feature) *the telephone system uses the long distance carrier's Dialed Number Identification Service to identify the specific number the customer is calling to select the correct computer response call flow format including relevant advertising messages* |
| 17a An analysis control system for use in a mail order facility or the like, said analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals comprises voice communication means and digital input means in the form of an array of buttons for providing data, comprising: | *a computer system used in a mail order facility receiving calls from a standard customer telephone* |
| 17b interface structure coupled to said communication facility to interface said remote terminals for voice and digital communication and including means to provide answer data signals provided by said individual callers from said remote terminals including signals indicative of an individual caller's customer number and credit card number | *a computer telephone structure receiving customer calls including caller ID and credit card number* |
| 17c credit verification structure to verify said individual caller's customer number and credit card number to determine said individual caller's credit | *using customer telephone number & credit card number to verify credit* |
| 17d record structure including memory and control | *recording in computer memory* |

10524-001-5/3/2006·153185.6

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 7

| | |
|---|---|
| means connected to said interface structure to receive and store data provided by said individual callers | *information from the customer* |
| __17e__ acknowledgement generator structure for providing a computer generated acknowledgement number to said individual callers | *using a computer to generate a transaction number to the customer (for example, a sales transaction number)* |
| __17f__ switching structure for transferring certain of said individual callers to a live operator; and | *computer structure for optionally transferring call to live operator* |
| __17g__ Central processing station coupled to said record structure to receive data on said individual callers | *computer to record customer data* |
| __33__ An analysis control system according to claim 17, wherein said customer number provided by an individual caller is the same as the customer number indicated on said individual caller's mail order catalog | (As an optional feature) *the customer inputs a number printed on a mail-order catalog* |
| __36__ An analysis control system according to claim 35, wherein said specific format is a television initiated mail order format | (As an optional feature) *the customer inputs information referencing a televised ad* |
| __37__ An analysis control system according to claim 36, wherein said answer data signals include signals indicative of mail-order order data | (As an optional feature) *the computer provides mail-order information to the customer prompted by the TV ad* |
| __38__ An analysis control system according to claim 37, wherein said mail-order order data is indicative of an item number | (As an optional feature) *the computer provides mail-order information to the customer including a catalogue item number* |
| __39__ An analysis control system according to claim 37, wherein said mail-order order data is indicative of further data related to said item number | (As an optional feature) *the computer provides additional mail-order information to the customer* |

Another example from the `762 patent is a series of claims directed to a method or system for a mail-order facility. Claim 49, depending upon and incorporating the elements of Claims 41 and 48 (and optionally Claims 50, 51, 52, or 53), appears to describe a telephone call-in to a mail-order computer system that advertises available "items for order." When a telephone call is received the caller is identified and may verbally provide name or address information. Items available for order are described, the caller's credit is verified, customer data is received and stored, preferably an order is taken and processed, and a verification number is generated. Optionally, the call can be transferred to a live operator.

Claim 49 is directed to a method that parallels the apparatus described in Claim 25 of the Katz `762 patent and it is also alleged to be infringed by the "1-800 Discover" and similar

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 8

telephone numbers by which Discover sells various goods and services.   Many of the elements, identified as coming from Claims 41 and 48, are the generic parts of a claimed computerized telephony "method."  But the added element from claim 49 appear to specifically require, for infringement, providing "signals" or information about "merchandise" so as to complete a sale transaction.  These are the advertising components of the invented method.

Telephonic advertising potentially infringes claim 49 of the `762 patent.  Allegations of Discover's infringement of these claims necessarily alleges misappropriation of this advertising method that apparently cannot be infringed without advertising.  The following chart identifies the language of these claims together with a potential interpretation of the claim language that RAKTL may advance (although Discover will not agree with it).

| U.S. No. 5,898,762<br>CLAIM-ELEMENT LANGUAGE | POTENTIAL<br>INTERPRETATION OF ELEMENT |
|---|---|
| **49**  An analysis control system according to claim 48, wherein said **answer data signals include signals indicative of item data regarding items for order.** | *Call in mail-order computer system informs customer of items that can be ordered by phone (advertising message)* |
| **48**  An analysis control system according to claim 41, wherein said data provided by said individual callers includes audio data indicative of a name or address or both for said individual caller for subsequent processing | *allows customer to orally provide name and/or address* |
| **41a** An analysis control system for use in a mail order facility or the like, said analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals comprises voice communication means and digital input means in the form of an array of buttons for providing data, comprising: | *a computer system used in a mail order facility receiving calls from a standard customer telephone* |
| **41b** interface structure coupled to said communication facility to interface said remote terminals for voice and digital communication and including means to provide answer data signals provided by said individual callers from said remote terminals including signals indicative of an individual caller's customer number; | *Computer receives customer telephone calls including caller ID* |
| **41c** credit verification structure to verify on-line said individual caller's customer number to determine said individual caller's credit; | *Computer performs customer credit check* |
| **41d** record structure including memory and control means connected to said interface structure to receive and | *Computer stores customer information in memory* |

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 9

| | |
|---|---|
| store data provided by said individual callers; | |
| 41e acknowledgement generator structure for providing a computer generated acknowledgement number to said individual callers; | *Computer generates a customer transaction number* |
| 41f switching structure for transferring certain of said individual callers to a live operator; and | *Computer can transfer call to live operator* |
| 41g central processing station coupled to said record structure to receive accumulated data on said individual callers. | *Computer stores accumulated customer information* |
| 50 An analysis control system according to claim 49, wherein an individual caller further provides additional answer data signals with respect to said items. | *Customer provides additional information including items ordered* |
| 51 An analysis control system according to claim 49, wherein at least certain of said answer data signals and said additional answer data signals are stored and processed. | *Customer order is stored and processed* |
| 52 An analysis control system according to claim 49 wherein said **answer data signals include signals indicative of color and size of an item.** | (As an optional feature) *customer can select color and size of item ordered* |
| 53 An analysis control system according to claim 41, wherein said computer generated acknowledgement number is indicative of a sequence number. | (As an optional feature) *customer is given computer generated sequential transaction acknowledgement number* |

Another example from RAKTL's complaints is Discover's alleged infringement of U.S. Patent No. 6,335,965 issued to Katz January 1, 2002, entitled "Voice-data telephonic interface control system" The `965 patent appears to be directed to a method of controlling telephone calls for, among other purposes, conducting mail-order transactions by calling, identifying and qualifying potential customers, providing advertising information and, only then, transferring the call to a live operator to continue the advertising message and complete the transaction. The method presumably requires a computer to initiate telephone calls, for example to sell goods and services. This patent appears to describe the automated sales calls people enjoy receiving so frequently at dinner time.

Claim 33 of the `965 patent ("A method according to claim 32, wherein the order transaction relates to a mail order") based on claims 31 and 32 (directed to an automated telephone system carrying out "an order transaction") allegedly would be infringed when Discover uses an automated telephone system to call potential customer's telephones, identifying the answered calls, qualifying the potential customers, and delivering an advertising message for a mail-order product sale that will be completed by a live operator.

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 10


RAKTL's allegations of Discover's infringement of all these claims necessarily alleges misappropriation (taking) and use of advertising techniques. The patent claims relate to advertising. The following chart identifies the language of these claims together with a potential interpretation of the claim language that RAKTL may advance (although Discover will not agree with it).

| U.S. No. 6,335,965<br>CLAIM-ELEMENT LANGUAGE | POTENTIAL<br>INTERPRETATION OF ELEMENT |
|---|---|
| **33.** A method according to claim 32, wherein the order **transaction relates to a mail order.** | *the operator conducts a mail-order transaction with the customer* |
| **32.** A method according to claim 31, wherein the transaction is **an order transaction.** | *the operator conducts an order transaction with the customer* |
| **31a. Method for controlling voice or data** or both types of **communications for use with a communication facility** including remote terminals for individual callers, wherein said remote terminals include a digital input device for providing digital responsive signals, said method comprising the steps of: | *a method for controlling customer communication when the customer uses a standard telephone* |
| **31b. receiving caller number identification signals** indicative of at least a portion of a caller's number from said communication facility; | *the method includes receiving caller identifying signals from the communications facility* |
| **31c cuing** select ones of said **remote terminals to prompt** selective actuation by an **individual caller** of said digital input device **to provide responsive signals;** | *calling ("cuing") selected telephones to prompt potential customers to respond by pressing buttons on the phone* |
| **31d selectively identifying** said responsive signals from said select ones of said remote terminals as digital data signals or digital control signals, wherein certain of said responsive signals can serve as digital data signals, digital control signals, or both, said responsive signals including signals indicative of a customer identification number for the individual caller that may be utilized to access a file for said individual caller; **testing** at least a portion of said **customer** identification number **for approval;** | *identifying responding potential customers and approving the customer for sales transactions* |
| **31e recording said caller number** identification signals from said communication facility as additional data for said individual caller; | *recording call identification* |

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 11

| | |
|---|---|
| 31f **Transferring a call** from said individual caller **to an attended terminal** and displaying at least a portion of data stored in said file to an operator at said attended terminal under control of said responsive signals indicative of said customer identification number and displaying at least a portion of the customer identification number wherein the operator at said attended terminal is capable of entering data to facilitate completion of the call from said individual caller; and | *transferring the call to a live operator for further interaction including recording additional customer data to complete transaction (i.e., sales transaction)* |
| 31g **generating computer acknowledgement numbers** to identify the transaction for the system and individual callers and providing said computer acknowledgement numbers to the individual callers. | *generating a computer transaction or confirmation number for the customer* |

Discover's automated telephone systems receive calls from or make calls to the public, advertise items available to order (including financial products, merchandise, travel, etc.) and execute orders for those products. Discover uses its accused systems to advertise products to the public, to provide information about items and to make statements in connection with the solicitation of business and in connection with the widespread distribution of promotional material to the public at large. The systems offer a broad array of advertising application, payment and reporting services. But Discover's Interactive Voice Response or IVR systems advertise many products including credit cards, credit card balance transfers, loans, brokerage services, health care products, gift cards, merchandise, and travel products.

And the Discover systems also advertise products of its "partners" that include dozens of brands in the restaurant, travel, clothing, hardware, furniture, flower, and other industries. Callers to various Discover telephone numbers are presented with promotional messages and menu choices that advertise and allow callers to order financial products or merchandise. Discover's use of its computerized telephone mail-order system is alleged to infringe RAKTL's patents.

RAKTL's document discovery requests detail numerous "accused [infringing] services" allegedly offered through Discover's automated telephone systems but the list does not limit the breadth of the allegedly infringing services. A November 18, 2005 letter from RAKTL's counsel to Discover's counsel clarifies the scope of Discover activities that allegedly infringe the patents-in-suit. A copy of that letter is enclosed. RAKTL's letter clarifies that the Discover system's "accused services" include advertising for its products and services.

Discover's confidential, proprietary IVR "call flow" diagrams produced to RAKTL in response to discovery demands also show that its accused automated telephone systems include,

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 12

at numerous stages of the telephone transactions, recorded or scripted advertising messages that are automatically selected based on the information provided by the customers and include sales promotions of Discover's goods, products and services. RAKTL's alleged injury arises from advertising activities.

We enclose, in confidence, copies of some Discover call flow diagrams that have been provided as part of discovery in this case. These diagrams were provided to RAKTL's attorneys marked as "Confidential" under the terms of a Protective Order in the RAKTL Action. We provide them to National Union, as our insurer, under the terms of that same Protective Order. We request and expect that you and National Union will treat them as Confidential and not disclose them to any other party but review them only in connection with the defense of this lawsuit. If National Union cannot maintain their confidential status, please immediately return them to us. These materials help illustrate the advertising activities of Discover's accused automated telephone systems that are alleged by RAKTL to infringe its patents. This information was requested by RAKTL in its effort to gather evidence to prove its case. Discover, of course, denies infringing any valid patent in this suit but RAKTL's allegations must be taken seriously.

RAKTL alleges Discover's wrongful conduct within reasonable definitions of the "misappropriation of advertising ideas" offense in the above policy: use of an advertising technique that is itself patented and the wrongful taking of an idea concerning the solicitation of business and customers.

Here, claim elements relate to advertising techniques or ideas concerning the solicitation of business. Therefore, at least some RAKTL patent claims perhaps can only be infringed by the use of the patented advertising techniques. RAKTL effectively alleges that Discover's wrongful conduct was committed in the course of advertising Discover's goods, products or services where infringement by "use" of advertising techniques is alleged. RAKTL expressly alleges infringement committed in the course of Discover's use of its automated systems for "customers [to] perform banking, credit card and other functions over the telephone."

The RAKTL allegations therefore potentially fit within the umbrella policy's "advertising injury" offense of "misappropriation of advertising ideas," triggering a defense duty by National Union.

Mike Skura, Coverage Unit.
AIG INSURANCE
May 4, 2006
Page 13


As you can see, it is critical that National Union immediately acknowledge its defense obligations, but National Union has failed to respond to Discover's tender. We trust that National Union will carefully consider this additional information. National Union should agree that, after considering its policy language, the complaints and the additional facts provided to it, its duty to defend the RAKTL Action is triggered. Please contact me if you have any questions or need additional information.


Very truly yours,


James P. Swift
Assistant General Counsel
MORGAN STANLEY

JPS:___

Enclosures:     Tender letter to Mike Skura, 10/28/2005
                National Union Fire Insurance Company of Pittsburgh, Pa, policy # BE 357 88 80
                RAKTL's First Amended Complaint
                Copies of the 15 U.S. Patents alleged in the complaints against Discover
                RAKTL discovery request letter, 11/18/2005
                Exemplary call flow diagrams (CONFIDENTIAL)
                        Complete call flow diagram
                        Cashback bonus call flow diagram
                        Balance transfer call flow diagram
                        Bank call flow diagram
                        Rewards catalogue call flow diagram
                Defense denial letter from Liberty Mutual Insurance, 11/09/2005
                Defense denial letter from Federal Insurance, 12/21/2005
                Defense denial letter from Federal Insurance, 1/25/2006

cc:             Anthony Pisciotta, Arthur J. Gallagher, Inc. – Risk Management Services

# EXHIBIT 10



**Domestic Claims, Inc.**
**Excess Claims**

175 Water Street, 22ʳᵈ Floor
New York, New York 10038
(212) 458-2988 (Phone)
(866) 315-1017 (Fax)
Kenneth.Horenstein@aig.com (e-mail)

May 9, 2006

**VIA E-MAIL and U.S. MAIL**

RECEIVED

MAY 1 1 2006

RISK & INS.
MANAGEMENT DEPT

Andrew B. Weisman, ARM, CPCU
Executive Director—Risk Management
Morgan Stanley
750 7ᵗʰ Ave., 33ʳᵈ Floor
New York, NY 10019

RE:   **Insured:**      **Morgan Stanley, Dean Witter, Discover & Co.**
      **Claimants:**   **Ronald A. Katz Technology Licensing, L.P.**
      **Claim No.:**   **169-180134**

Dear Mr. Weisman:

As you know, AIG Domestic Claims, Inc. ("AIGDC") is the claims administrator for AIU Insurance Company ("AIU") with respect to Commercial Umbrella Policy No. BE 357-12-60, issued to Morgan Stanley, Dean Witter, Discover & Co., and for National Union Fire Insurance Company of Pittsburgh, PA ("National Union") with respect to Commercial Umbrella Policy Nos. BE 3578880, BE 2195452 and BE 2977817, issued to Morgan Stanley. Having evaluated the information provided to AIGDC at our May 4, 2006 meeting regarding this matter, the additional information provided by Morgan Stanley in correspondence to AIGDC dated May 4, 2006, and the legal and factual allegations contained in the underlying First Amended Complaint for Patent Infringement, we are writing to advise Discover Financial Services, Inc. and Discover Bank (collectively, the "Discover Defendants") of AIU's and National Union's respective coverage positions relative to the lawsuit entitled *Ronald A. Katz Technology Licensing, L.P. v. Citibank, N.A., et al.*, Civil Action No. 5:05-CV-142-DF, pending in the United States District Court for the Eastern District of Texas (the "underlying lawsuit"), and, in particular, as to why AIU and National Union have no obligation to defend or indemnify the Discover Defendants with respect to the underlying lawsuit.

Prior to discussing the relevant policy provisions and coverage issues, we summarize below our understanding of the underlying lawsuit. Our summary in no way implies that AIU and National Union believe that the allegations are true or have merit.

According to the First Amended Complaint for Patent Infringement, which we understand to be the operative complaint in the underlying lawsuit, the Discover Defendants and their co-defendants allegedly infringed upon an interactive call processing patent portfolio owned by Ronald A. Katz Technology Licensing, L.P. ("RAKTL"). RAKTL alleges that it has repeatedly attempted to engage each of the defendants in licensing negotiations for the patent portfolio, all

Services Provided by Members of
American International Group, Inc.

Andrew B. Weisman, ARM, CPCU
Morgan Stanley
May 9, 2006
Page 2

to no avail. Of the causes of action asserted in the First Amended Complaint, one is made against the Discover Defendants: Count II ("Patent Infringement by Discover Financial Services, Inc. and Discover Bank"). In it, RAKTL alleges that the Discover Defendants have infringed RAKTL's patent portfolio by making, using, offering to sell and/or selling an automated telephone system that allows customers to perform banking, credit card and other functions over the telephone. RAKTL seeks injunctive relief, an accounting for damages, an award of treble damages and such other relief as the court deems just and equitable.

AIU issued to Morgan Stanley, Dean Witter, Discover & Co. Commercial Umbrella Policy No. BE 357-12-60 for the policy period effective October 1, 1997 to October 1, 1998 (the "AIU Policy"). National Union issued the following commercial umbrella policies to Morgan Stanley: Policy No. BE 3578880 for the policy period effective October 1, 1998 to October 1, 2002 (the "1998-02 National Union Policy"); Policy No. BE 2195452 for the policy period effective October 1, 2002 to October 1, 2003 (the "2002-03 National Union Policy"); and, Policy No. BE 2977817 for the policy period effective October 1, 2003 to October 1, 2004 (the "2003-04 National Union Policy"). We refer to 1998-02, 2002-03, and 2003-04 National Union Policies collectively as the "National Union Policies."

For your convenience, we discuss below certain provisions of the AIU Policy and the National Union Policies. Please note, however, that this discussion involves only a partial recitation of the terms, conditions, limitations and exclusions contained in the AIU Policy and the National Union Policies. It is not intended to supplement, amend, supersede or otherwise alter the AIU Policy and National Union Policies. AIU and National Union do not intend to waive any of the provisions of the AIU Policy and National Union Policies by virtue of this discussion. Please consult your copies of the AIU Policy and the National Union Policies for a complete listing of all of the terms, conditions, limitations and exclusions contained therein.

Please note the following language contained in the AIU Policy:

## Insuring Agreements

I.  **Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

\*     \*     \*

Andrew B. Weisman, ARM, CPCU
Morgan Stanley
May 9, 2006
Page 3

**II.    Defense**

  **A.**   We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

  1.   The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

  2.   Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**

  *        *        *

**III.    Limits of Insurance**

  *        *        *

  **E.**   Retained Limit

  We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

  1.   The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured;** or

  2.   The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

  and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Andrew B. Weisman, ARM, CPCU
Morgan Stanley
May 9, 2006
Page 4

The AIU Policy contains the following definitions:

### IV.   Definitions

**A.**   **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

    **1.**   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **2.**   Oral or written publication of material that violates a person's right of privacy;

    **3.**   Misappropriation of advertising ideas or style of doing business; or

    **4.**   Infringement of copyright, title or slogan.

\*     \*     \*

**C.**   **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

\*     \*     \*

**H.**   **Occurrence** means:

    **1.**   As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions, act or omission in the furnishing of all these services to any one person shall be considered as arising out of one **Occurrence**;

    **2.**   As respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the