**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DISCOVER FINANCIAL SERVICES LLC,** ) | |
| **an Illinois limited liability company, and** ) | |
| **DISCOVER BANK, a Delaware chartered** ) | |
| **bank,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **No. 06 C 4359** |
| ) | |
| **NATIONAL UNION FIRE INSURANCE** ) | **Judge Rebecca R. Pallmeyer** |
| **COMPANY OF PITTSBURGH, PA, a** ) | |
| **Pennsylvania corporation,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

The issue in this insurance coverage dispute is whether a claim that the insured has infringed a patent for a telephone call processing system constitutes a claim of "advertising injury." In 1998, Defendant, National Union Fire Insurance Company of Pittsburgh ("National Union"),[1] issued a Commercial Umbrella Insurance Policy to Morgan Stanley Dean Witter & Co. (now, "Morgan Stanley"). Under this policy, National Union undertook insurance obligations to Morgan Stanley and those subsidiaries in which Morgan Stanley had an ownership interest greater than 50% ("the Policy"). Among National Union's obligations were duties to pay and defend the insured against "advertising injury" claims, subject to certain exceptions and exclusions. In this action, Plaintiffs, Discover Financial Services LLC and Discover Bank (collectively, "Discover"),[2] assert that

---

[1]   National Union is a Pennsylvania corporation with its principal place of business in New York, New York. (National Union's Local Rule 56.1 Statement of Undisputed Facts in Support of its Cross-Motion for Summary Judgment ("Def. LR 56.1 Stmt.") ¶ 1.)

[2]   In providing basic information about the Plaintiff-companies, Discover cites only to their Amended Complaint. (Discover Financial Services LLC's and Discover Bank's Local Rule 56.1 Statement of Undisputed Facts in Support of Their Motion for Partial Summary Judgment Regarding Duty to Defend ("Pl. LR 56.1 Stmt.") ¶ 2.) National Union has objected, asserting that the allegations in Discover's Amended Complaint are unsupported and that National Union cannot respond without additional discovery. (Jan. 8, 2007 Rule 56(f) Affidavit on Behalf of National Union (continued...)

they are insured under the Policy and that National Union has a duty to defend and indemnify them in a patent infringement action currently pending against Discover in the Eastern District of Texas. *See Ronald A. Katz Technology Licensing, L.P. v. Citibank, N.A.*, No. 5:05-CV-142-DF, (the "RAKTL Action.")  Discover now seeks a declaration regarding National Union's duties and also seek damages on a breach of contract theory.  The parties have filed cross motions for summary judgment on the issue of National Union's duty to defend Discover in the RAKTL Action.  For the reasons set forth below, the court grants National Union's motion for summary judgment and denies Discover's motion.

## BACKGROUND

### A.    National Union's Umbrella Insurance Policy

On October 1, 1998, National Union issued the Policy to Morgan Stanley.  (*See* BE 357 88 80, Ex. 1.A. to Pl. LR 56.1 Stmt.)  On October 1, 2001, National Union extended the Policy, which was set to expire on October 1, 2001, until October 1, 2002, as Policy No. BE 357 88 80.  (*Id.* at Endorsement #0011.)  The Policy provides that Morgan Stanley and "all subsidiaries, affiliates,

---

[2](...continued)
in Response to the Discover Parties' Motion for Partial Partial Summary Judgment ¶ 11.)

The court's ruling in favor of National Union effectively moots this objection.  The court notes, however, that the information National Union purportedly needs is publicly available and easily located on the internet.  *See, e.g.*, Discover Financial Services Form 10-Q for the quarter ending May 31, 2007 (July 10, 2007), *available at* http://www.sec.gov/Archives/edgar/data/ 1393612/00011931250715 4185 /d10q.htm (DFS Services LLC (formerly Discover Financial Services LLC) is a Delaware limited liability company headquartered in Riverwoods, Illinois); Delaware Division of Corporations, *available at* https://sos-res.state.de.us /tin/GINameSearch.jsp (last visited Sept. 25, 2007) (Discover Bank is a Delaware Corporation based in Greenwood, Delaware).  Moreover, National Union has admitted that this court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because the Discover entities (whose members were identified in Discover's Amended Complaint)  and National Union are "citizens of different states and the amount in controversy exceeds $75,000."  (Def. LR 56.1 Stmt. ¶ 4.)

Notably, National Union also asserts, in its own statement of facts, that National Union is authorized to and transacts business in Illinois, that the Discover entities are both subject to this court's personal jurisdiction, and that venue is proper in this District.  (Def. LR 56.1 Stmt. ¶¶ 1, 5-6.) Thus, the court overrules National Union's objections to Discover's assertions that the court has personal jurisdiction over National Union because National Union sells insurance in Illinois and is licensed to do business in Illinois, and that venue is proper here.  (Pl. LR 56.1 Stmt. ¶¶ 6-7.)

related companies and joint ventures"—defined as "those companies or legal entities in which the named insured has 50% or more ownership interest and/or managing control"—qualify as "Named Insured." (*Id.* at Endorsement #001.) It is undisputed that the Discover entities are insured under the Policy: Andrew B. Weisman, the Executive Director of Risk and Insurance Management for Morgan Stanley, attested that Morgan Stanley has owned more than 50% of Discover Financial Services LLC and Discover Bank since 1997. (Pl. LR 56.1 Stmt. ¶ 11; Declaration of Andrew B. Weisman ¶¶ 2-3, Ex. 2 to Pl. LR 56.1 Stmt.)

The Policy, in relevant part, reads as follows:

I.      **Coverage**

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.
. . . .

II.     **Defense**

A.      We shall have the right and duty to defend any claim or suit seeking damages by the terms and conditions of this policy when: (1) [t]he applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or (2) [d]amages are sought for Bodily Injury, Property Damage, Personal Injury, or Advertising Injury covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

. . . .

B.      When we assume the defense of any claim or suit: (1) [w]e will defend any suit against the Insured seeking damages on account of . . . Advertising Injury even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

. . . .

3

**III.**    **Limits of Insurance**

. . . .

E.    Retained Limit
We will be liable only for that portion of damages in excess of the Insured's Retained Limit which is defined as the greater of either: (1) [t]he total of the applicable limits of the underlying policies listed in the Schedule of Underlying insurance and the applicable limits of any other underlying insurance providing coverage to the Insured; or (2) [t]he amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the Insured; and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

**IV.**    **Definitions**

A.    Advertising Injury means injury arising solely out of your advertising activities as a result of one or more of the following offenses: . . . (3) [m]isappropriation of advertising ideas or style of doing business.

. . . .

H.    Occurrence means: . . . (3) [a]s respects Advertising Injury, an offense committed in the course of advertising your goods, products and services that results in Advertising Injury. All damages that arise from the same or related injurious material or act shall be considered as arising out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

. . . .

**V.**    **Exclusions**

This insurance does not apply to:

. . . .

R.    Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of or by reason of: (1) [t]he purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument . . . .

(BE 357 88 80, at 1-5, 7, 10.)

**B.    The RAKTL Action**

On July 19, 2005, Ronald A. Katz Technology Licensing, L.P. ("RAKTL") sued Discover for patent infringement. (Pl. LR 56.1 Stmt. ¶¶ 13-14; Def. LR 56.1 Stmt. ¶¶ 7-8.) In its amended

complaint filed on December 16, 2005, RAKTL alleged that Discover infringed RAKTL's patents for "interactive call processing" systems. Specifically, RAKTL claimed that Discover "operated automated telephone systems, including without limitation the Discover Bank and Discover Card automated customer service systems," which are systems "that allow their customers to perform banking, credit card, and other functions over the telephone," and that Discover infringed (or induced others to infringe) patents belonging to RAKTL by "making, using, offering to sell, and/or selling" these automated telephone systems in the United States. (RAKTL Am. Compl. ¶ 68, Ex. 1.C. to Def. LR 56.1 Stmt.)[3] RAKTL requested injunctive relief, an accounting for damages, and an award of treble damages to remedy Discover's alleged patent infringement. (Def. LR 56.1 Stmt. ¶ 13.)[4]

According to RAKTL's amended complaint, RAKTL acquired from Ronald A. Katz a number of patents in the field of "interactive call processing" in the 1990s. (RAKTL Am. Compl. ¶ 33, Ex. C to Pl. LR 56.1 Stmt.) Fifteen patents are identified in RAKTL's amended complaint ("the patents in suit"). Of these patents, one is for a "Statistical Analysis System for Use with Public Communication Facility," one is for a "Telephonic Interface Control System," one is for "Multiple

---

[3]     Discover acknowledges that it operates automated telephonic systems, including the Discover Bank and Discover Card automated customer service systems, and asserts in this lawsuit that such systems perform "'other functions' such as advertising and/or promoting Discover's goods and services . . . ." Because Discover cites to no evidence in support of these assertions other than the Amended Complaint in this action, the court will not consider them. (Pl. LR 56.1 Stmt. ¶¶ 18-19.)

[4]     The Discover parties assert that they had no knowledge that use of their automated customer service systems might constitute a known loss that they were required to report to National Union until they were served with the RAKTL complaint in July of 2005. (Pl. LR 56.1 Stmt. ¶ 21, citing Weisman Decl. ¶ 5.) National Union denies Discover's assertion, which is supported by Andrew Weisman's Declaration, but claims that it cannot present facts in response and, accordingly, requests discovery as set forth in its Rule 56(f) Affidavit. The question of whether Discover had knowledge that use of the automated customer service systems might constitute a known loss is not material to the discussion that follows regarding National Union's duty to defend Discover. And, because the court concludes that RAKTL's alleged injury is not covered by the Policy, National Union's request for discovery on this issue is moot.

Format Telephonic Interface System," six are for a "Telephonic Interface Statistical Analysis System," four are for a "Telephonic Interface Call Processing System with Call Selectivity," one is for a "Multiple Format Telephonic Interface Control System," and one is for a "Voice-Data Telephonic Interface Control System." (*Id.* ¶ 66; Def. LR 56.1 Stmt. ¶ 10.)

RAKTL alleged that the patents in suit "teach inventions dating from the mid 1980s to early 1990s, involving the integration of telephone systems with computer systems," and that they "teach and claim a variety of methods and systems enabling telephone callers to exchange information with computer systems through a telephone network." (Def. LR 56.1 Stmt. ¶ 15.)[5]  RAKTL further stated that the inventions "typically focus on activities and structures of the interface system," which "achieve valuable security, control, and efficiency in automated telephone systems." (*Id.*)

National Union describes the specifications set forth in thirteen of the fifteen patents as follows:

- "Statistical Interface" - this specification "teaches a variety of inventions enabling secure and efficient transactions and data processing based on interactions with callers. For example, callers may enter identification information over the telephone and complete sales orders or perform other transactions or services, with or without operator assistance."
- "Call Selectivity" - this specification "teaches the use of different 'call modes,' such as toll-free calls and area-code calls, to selectively accommodate and control interactive formats."
- "Conditional Interface" - this specification "teaches the use of 'call data signals', signals identifying called telephone and/or calling telephone numbers, to control callers' access to interactive format."
- "Conditional Interface Plus" - this specification "builds upon the 'Conditional

---

[5]      In various statements of fact, National Union describes the patents in suit by quoting RAKTL's written submissions in the RAKTL Action and Judge Klausner's opinion in *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.,* 326 F. Supp. 2d 1060 (C.D. Cal. 2003) (*See* Def. LR 56.1 Stmt. ¶¶ 14-18, citing Plaintiff's Opposition to Defendant's Motion to Compel, Ex. B to Def. LR 56.1 Stmt. and Plaintiff's Opening Claim Construction Brief, Ex. C to Def. LR 56.1 Stmt and *Verizon California Inc.*, 326 F. Supp. 2d. at 1085-86, Ex. D. to Def. LR 56.1 Stmt.) Discover objects to National Union's citations to these materials, contending that the quoted language must be considered in context of the entire submission. (Pl. LR 56.1 Resp. ¶¶ 14-18.) Discover does not cite to any particular portions of RAKTL's submissions that the court should also consider, however, nor does it offer record evidence to contradict National Union's characterizations of the patents in suit. These objections are therefore overruled.

Interface' specification, with additional disclosure regarding interactions with live operators."

- "Voice Data" - this specification "teaches various inventive ways to use signals input by callers, including digital (numerical) control signals, digital data signals, and audio (voice) signals."
- "Statistical Analysis" - this specification "teaches inventions involving the receipt and processing of data from callers, to perform operations such as isolating subsets of callers."

(*Id.* ¶ 17, citing Plaintiff's Opening Claim Construction Brief, Ex. C to Def. LR 56.1 Stmt. at 2-3 and *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 326 F. Supp. 2d. 1060, 1085-86 (C.D. Cal. 2003), Ex. D. to Def. LR 56.1 Stmt.)[6]  The remaining two patents in suit cover the following features:

- "Dual Call Mode and Cue Suppression" - this specification "involves interactive voice response systems that provide communication between callers using telephones and computer systems including audio response units.  The 'Dual Call Mode' refers to the ability of the interactive voice response system to handle multiple call modes, such as toll-free calls, charge calls, and area code calls. The 'Cue Suppression' refers to the ability to handle repeat callers and avoid asking any questions that were previously provided to them."
- "Formal Qualification" - this specification "involves an interactive call processing system that includes an automatic call distributor that queues calls received from the telephone network and distributes the calls to one of multiple processing systems for processing."

(Def. LR 56.1 Stmt. ¶ 18, citing *Verizon Cal. Inc.*, 326 F. Supp. 2d. at 1085-86, 1094.)

Discover asserts that certain claims in some of the patents in suit are relevant to National Union's duty to defend Discover under the Policy.  Discover identifies the following as relevant language:

- Claim 219 of the `734 Patent states that the patent claims "[a] telephone interface system . . . wherein said selective operating format involves advertising a product for sale."
- Claim 72 of the `863 Patent states that the patent claims "[a] process . . . wherein said specific operating format is an automated promotional format

---

[6]      Discover denies that RAKTL's claim construction brief includes the `893 patent in the "Conditional Interface" category, but the court in *Verizon California Inc.*, a case addressing the patents in suit, specified that the `893 patent is a "conditional interface" patent.  *See* 326 F. Supp. 2d. at 1092.

associated with said specific operating format."

- Claims 74 and 86 of the `863 Patent both state that the patent claims "[a] process . .   wherein said participation numbers are associated with an automated promotion of said products."
- Claim 89 of the `863 Patent states that the patent claims "[a] process . . . wherein said process is for automating a promotion."
- Claim 118 of the `863 Patent states that the patent claims "[a] process . . . including, [among many other steps], the steps of . . . receiving said call data signals indicative of called number identification data . . . by said individual callers to select a specific operating format from a plurality of operating formats of said operations of said interface wherein at least one of said plurality of operating formats includes an automated promotional format for promoting said products . . . ."

(Pl. LR 56.1 Stmt. ¶ 22; U.S. Patent 5,828,734, Ex. 3 to Pl. LR 56.1 Stmt.; U.S. Patent 5,684,864, Ex. 4 to Pl. LR 56.1 Stmt.)

Notably, the claims Discover has identified as relevant are not the focus of RAKTL's lawsuit. At some point prior to May 16, 2006, the court directed RAKTL to "reduce the number of asserted claims to ten claims." In response to this order, on May 16, 2006, RAKTL submitted to the court and the defendants in that case a list of representative claims. (5/16/06 List of Representative Claims, Ex. F to Def. LR 56.1 Stmt.) Two months later, RAKTL submitted eight additional representative claims. (7/14/06 List of Additional Representative Claims, Ex G. to Def. LR 56.1 Stmt.) In these two submissions, RAKTL did not list any of the claims quoted above, which Discover identified as relevant, (Def. LR 56.1 Stmt. ¶¶ 20-21), nor did RAKTL list any claims that included language similar to the quoted language above or other language referencing advertising or product promotion. (*See* 5/16/06 List of Representative Claims; 7/14/06 List of Additional Representative Claims.)[7] To illustrate the nature of the claims that are listed on RAKTL's list of representative claims, the court quotes just a few here:

- Claim 92 of U.S. Patent No. 5,828,734:
  A telephone call processing system according to claim 90, wherein said

---

[7]     The court notes that it could not examine one claim listed in Discover's list of additional representative claims, "Claim 71 of U.S. Patent No. 5,351,285," because the `285 patent lists only sixty-seven claims.

8

qualification means tests said digital signals representing calling terminal numbers associated with at least certain of said multitude of terminals, automatically provided from said telephonic communication facility.

- Claim 4 of U.S. Patent No. 6,148,065:
  A system to be utilized with a telephone facility according to claim 3, wherein said qualification structure tests a call provided PIN number.

- Claim 18 of U.S. Patent No. 6,678,360:
  A method according to claim 14, further comprising the step of: receiving caller telephone number data automatically provided by the telephone facility for each customer and utilizing said caller telephone number data to control certain operations of the select operating format.

- Claim 34 of U.S. Patent No. 5,815,551:
  A system according to claim 33, wherein said calling number identification signals control at least in part processing of said customer number data entered by said caller.

- Claim 9 of U.S. Patent No. 6,044,135:
  A ticket and ticket processor according to claim 1, wherein said telephone number indicia indicates a toll free number associated with said specific format for calling to attain processing of said unique identification number in accordance with said specific format.

In September 2006, Discover served interrogatories on RAKTL, asking for more information concerning RAKTL's claims of infringement. Specifically, Discover asked whether RAKTL contended that any of the following features of Discover's automated telephone systems contributed to the alleged infringement: features enabling the consumer to (1) enroll in a "5% cash back" bonus promotion, (2) redeem travel or merchandise awards, (3) make balance transfers and automated payments, (4) try free for 30 days and/or purchase health, credit, or identity protection services, (5) pay credit card balances over the telephone with or without the assistance of an account manager, and/or (6) automatically apply funds from a designated bank account against the consumer's credit card balance. (Discover Interrogatory One at 6, Ex. 5 to Pl. LR 56.1 Stmt.) If those functions did assertedly contribute to the infringement, Discover asked RAKTL to identify the particular patents so infringed. (*Id.*) RAKTL responded only by stating generally that the six functions identified in Discover's interrogatory "are among the functions which are performed by

Discover's automated telephone services and/or systems that infringe claims from one or more" of the patents in suit. (Pl. LR 56.1 Stmt. ¶ 23; Def. LR 56.1 Stmt. ¶ 24.) RAKTL limited that broad answer by noting that it related only to those claims it had asserted against Discover, identified in RAKTL's May 16, 2006 and July 14, 2006 lists of representative claims. (Discover Interrogatory One at 4, General Objection E.)

## C.    Discover's Actions After Filing of RAKTL Action

Upon being served with the RAKTL Action, Discover tendered the matter to both of its underlying insurance carriers—Liberty Mutual Insurance Company and Federal Insurance Company. (Pl. LR 56.1 Stmt. ¶ 25.) Both carriers declined to defend Discover, citing the blanket exclusions for patent infringement claims arising from "bodily injury," "property damage," "advertising injury," or "personal injury" included in their policies. (*Id.*) On October 28, 2005, Arthur J. Gallagher, Inc. Risk Management Services ("Gallagher") contacted AIU/AIG Insurance, the claims administrator for National Union, on Discover's behalf. Gallagher advised AIU/AIG of the RAKTL Action and requested that National Union "take whatever steps [were] necessary to defend & protect the interests" of the Discover parties and that it evaluate "any and all coverage opportunities for any and all AIU/AIG insurance policies effective from 1988 to present." (10/28/05 Facsimile, Ex. 8 to Pl. LR 56.1 Stmt.; Def. LR 56.1 Stmt. ¶¶ 30-31.) In response to this request, AIG Domestic Claims ("AIGDC"), the claims administrator for AIU Insurance Company, communicated with Gallagher about the positions being taken by underlying insurance carriers and the filing of amended pleadings. (Def. LR 56.1 Stmt. ¶ 34.) On November 23, 2005, AIGDC issued a letter to Gallagher acknowledging that it had received Gallagher's notice of the RAKTL Action, advising Discover that AIGDC was reviewing the claims, reserving AIU's right to deny coverage under the Policy, and requesting that Gallagher provide AIGDC with information regarding Discover's primary insurance policies. (*Id.* ¶¶ 32-33.) There is no evidence in the record of any further communication until February 16, 2006, when Gallagher provided to AIGDC, by e-mail, copies of RAKTL's first

amended complaint and the position letters from Discover's primary insurance carriers. (*Id.* ¶ 35.)

On May 4, 2006, Discover informed AIGDC, by letter, that the judge in the RAKTL Action had ordered the parties to participate in a settlement mediation and that Discover had retained defense counsel in order to avoid a default judgment; Discover urged National Union to participate in the mediation and to consider its duty to defend Discover in light of additional information Discover provided on RAKTL's claims and the patents that Discover was alleged to have infringed. (Pl. LR 56.1 Stmt. ¶¶ 28-29, 31, 5/4/06 Letter from Morgan Stanley to AIG Insurance at 2, Ex. 9 to Pl. LR 56.1 Stmt.) AIGDC responded on behalf of National Union in a letter dated May 9, 2006, which was received by Morgan Stanley on May 11, 2006. In that letter, AIGDC advised Discover that it did not believe it had any coverage obligations with respect to the RAKTL Action. (Pl. LR 56.1 Stmt. ¶ 34; 5/9/06 Letter from AIG Insurance to Morgan Stanley, Ex. 10 to Pl. LR 56.1 Stmt.; Def. LR 56.1 Stmt. ¶ 37.) National Union did not participate in the May 10, 2006 settlement mediation and the RAKTL Action did not settle on that date. (Pl. LR 56.1 Stmt. ¶ 33; Def. LR 56.1 Resp. ¶ 32.) In a letter dated June 30, 2006, AIG again asserted that National Union had no obligation to defend or indemnify Discover in the RAKTL Action. (Pl. LR 56.1 Stmt. ¶ 37; 6/20/06 Letter from AIG to Morgan Stanley, Ex. 11 to PL. LR 56.1 Stmt.) It is this dispute that is the subject of the motions before the court.

## DISCUSSION

In moving for summary judgment, Discover contends that Illinois law governs the parties' dispute and that National Union is obligated to defend Discover in the RAKTL Action because the RAKTL Action concerns a covered advertising injury for which no underlying insurance provider is obligated to defend Discover. (Memorandum of Law in Support of Discover Financial Services LLC's and Discover Bank's Motion for Partial Summary Judgment Regarding Defendant's Duty to Defend ("Pl. Mem.") at 8, 10.) National Union argues that it is not obligated to defend Discover in

the RAKTL Action. National Union asserts that RAKTL did not sue Discover for a covered advertising injury and, even if the RAKTL Action did concern a covered advertising injury, coverage in the RAKTL Action would be precluded by the Policy's express exclusions. (Memorandum in Opposition to the Discover Parties' Motion for Partial Summary Judgment and in Support of National Union's Cross-Motion for Summary Judgment ("Def. Mem.") at 3-4.) For the reasons explained here, the court concludes that National Union has no duty to defend Discover in the RAKTL Action.

## A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On cross motions for summary judgment, such as those presented in this case, the court credits the nonmovant's version of any disputed facts. *Am. Prot. Ins. Co. v. Airborne, Inc.*, 476 F. Supp. 2d 985, 988 (N.D. Ill. 2007). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 322-23. If the moving party meets this burden, the non-moving party must then "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Id.* The interpretation of an insurance policy is a question of law properly resolved on summary judgment.

*Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000).

**B.      Choice of Law**

The parties disagree concerning what state law should govern this court's interpretation of the Policy, which does not contain a choice of law provision.  Discover argues that the court should apply Illinois law.  (Pl. Mem. at 8-10.)  National Union disagrees with "the Discover Parties' selective and incomplete choice of law analysis, and maintains that further discovery is necessary to determine choice of law in this instance."  (Def. Mem. at 7.)  The court agrees with Discover.

A district court sitting in diversity applies the "principles of the forum state to determine which state's substantive law governs the proceeding"; the court's choice of law analysis is therefore governed by Illinois law.  *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) (citations omitted).  When an insurance policy does not specify the governing law, Illinois courts employ a "most significant contacts" test to determine the governing substantive law.  *Id.* at 873. To determine the state with the "most significant contacts," the court considers: (1) the location of the subject matter; (2) the place of delivery of the contract; (3) the domicile of the insured or the insurer; (4) the place of the last act to give rise to a valid contract; (5) the place of performance; or (6) any other place bearing a rational relationship to the contract.  *Jupiter Aluminum,* 225 F.3d at 873 (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill. 2d 520, 655 N.E.2d 842, 845 (1995)).  In this case, only Discover addresses the "most significant contacts" test.  According to Discover, Illinois is the state with the "most significant contacts" because the automated phone system that is the subject of the RAKTL Action is primarily located in and controlled from Riverwoods, Illinois; Discover Financial Services, LLC is domiciled in Riverwoods, Illinois; the insured risk and a substantial part of the events giving rise to the claim occurred in Illinois; and "the 'advertising injury' coverage looks to the location (i.e., Illinois) from which the advertising conduct of the insured emanates."  (Pl. Mem. at 9, citing Pl. LR 56.1 Stmt. ¶ 7.)  As the court explained above, it is undisputed that Discover Financial Services, LLC is domiciled in Riverwoods, Illinois.

*See supra* note 2. National Union does, however, dispute Discover's remaining assertions, which are supported only by citations to Discover's Amended Complaint. (Pl. LR 56.1 Stmt. ¶ 7.)

First, National Union contends that the insured risk "is substantially outside the Northern District of Illinois." (Def. LR 56.1 Resp. ¶ 7.) In support, National Union cites to the Policy's declarations, which merely indicate that the named insured, Morgan Stanley, and National Union's administrative offices both have New York City addresses. (*Id.*) In the court's view, these declarations are not sufficient to establish the location of the insured risk at issue—the alleged patent infringement. National Union also contends, citing to RAKTL's complaint, which was filed in the Eastern District of Texas, and a letter exchanged between the Discover and National Union representatives in New York, that "substantial parts of the events giving rise to the claim took place outside of Illinois." (*Id.*) RAKTL's complaint, and the correspondence between the parties may have little relevance to the location of the insured risks; but for its part, Discover has cited no record evidence in support of its assertions that the "insured risk is substantially in the Northern District of Illinois, [and that] substantial parts of the events giving rise to this claim occurred" within the Northern District of Illinois, "including Discover's advertising systems, which primarily emanate from and are controlled from Riverwoods, Illinois." (Pl. LR 56.1 Stmt. ¶ 7.)

Although the record is, thus, arguably incomplete on the choice of law issue, the court is unwilling to delay its summary judgment ruling to permit discovery. Discover has proposed that Illinois law should further apply and, although National Union claims a need for additional discovery, it has not explicitly objected to the application of Illinois law. Indeed, National Union states that "regardless of which state's law applies, an insurer's duty to defend is only triggered if the complaint against the insured states a claim the policy insures against," and that National Union is entitled to summary judgment because the RAKTL Action "does not involve a covered claim." (Def. Mem. at 7.) Nor has National Union suggested that any of the facts already known to it militate in favor of some other choice of law. The court therefore considers National Union's duty to defend Discover

under the Policy in light of Illinois law.[8]

## C.    National Union's Duty to Defend

The parties disagree on whether the Policy obligates National Union to defend Discover in

the RAKTL Action.   Under Illinois law, an insurer is obligated to defend an insured if the facts

alleged in the underlying complaint "fall within, or potentially within, the policy's coverage."  *Valley*

*Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 314-15 (2006) (citing

*Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154, 828 N.E.2d

1098 (2005)).[9]   This court gives the words of an insurance policy "their plain, ordinary and popular

meanings" when a provision is clear and unambiguous.   *Am. Family Mut. Ins. Co. v. Niebuhr*, 369

Ill. App. 3d 517, 522, 860 N.E.2d 436, 441 (1st Dist. 2006) (citation omitted).   If a provision is

ambiguous or subject to more than one reasonable interpretation, the court must construe the

provision in favor of the insured, but the court will not strain to find ambiguity where none exists.

*Id.* (citations omitted).   "[E]ven if [only] one of several theories of recovery alleged in the complaint

falls within the potential coverage of the policy," or if the allegations in the underlying complaint are

---

[8]      The only other states even mentioned at any other point in the parties' factual
materials are Delaware, Texas, and New York.  Though the court has no reason to believe that it
would be more appropriate to apply the law of these states over Illinois law, it is worth noting that
the law of these states regarding an insurer's duty to defend mirrors Illinois law.   *See infra* note 9.

[9]      Like Illinois, Delaware, Texas, and New York—the only other states mentioned at
all in the parties' statements of fact—construe an insurer's duty to defend broadly.   *See BP Air
Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 871 N.E.2d 1128 (2007) (under New
York law, an insurer's duty to defend is "exceedingly broad" and requires an insurer to defend an
insured whenever the allegations of the underlying complaint "suggest a reasonable possibility of
coverage" or bring the claim "even potentially within the protection purchased") (citations and
internal quotations omitted); *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex.
App. Ft. Worth 2006) (under Texas law, "allegations against the insured are liberally construed in
favor of coverage," and a "plaintiff's factual allegations that potentially support a covered claim are
all that is needed to invoke the insurer's duty to defend") (citations omitted); *Capano Mgmt. Co. v.
Transcon. Ins. Co.*, 78 F. Supp. 2d 320, 324 (D. Del. 1999) (under Delaware law, an insurer has
a duty to defend if allegations in the underlying complaint fall within the terms of the insurance
policy; if the insurer claims it has no duty to defend, it has the burden to prove, considering every
allegation in underlying complaint, that there is no possible situation in which it would be obligated
to defend) (citations omitted).

"groundless, false or fraudulent," the insured has a duty to defend. *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 315 (citing *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991)). "Thus, an insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 315 (citing *Gen. Agents Ins.,* 215 Ill. 2d at 154, 828 N.E.2d at 1098). In making this determination, the court construes the allegations liberally in favor of the insured. *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314.

As noted earlier, there is no dispute of fact as to whether the Discover parties are insured by National Union under the Policy. The court now turns to whether RAKTL's claim falls within or potentially within the Policy's terms.

### 1. Whether the RAKTL Action Involves a Covered "Advertising Injury"

As stated above, the Policy covers advertising injuries taking place during the policy period that are caused by occurrences. (BE 357 88 80 at 1.) Discover argues that RAKTL has alleged an advertising injury that is covered by the Policy. (Pl. Mem. at 10.) National Union disagrees and contends that the RAKTL Action plainly does not involve a covered advertising injury. (Def. Mem. at 7.)

In relevant part, the Policy defines an advertising injury as an "injury arising solely out of . . . advertising activities as a result of . . . misappropriation of advertising ideas or style of doing business." (*Id.* at 3.) An occurrence, as it relates to an advertising injury, is "an offense committed in the course of advertising . . . goods, products and services that results in an Advertising Injury." (*Id.* at 5.) In other words, National Union has a duty to defend Discover if RAKTL is claiming or is possibly claiming that Discover injured RAKTL in the course of advertising Discover's goods, products and services; that such injury was due to Discover's misappropriation of RAKTL's

16

advertising ideas or style of doing business; and that the injury arises solely out of Discover's advertising activities. As it appears dispositive, the court turns first, to whether it is possible that RAKTL's alleged injury arises "solely out of" Discover's advertising activities.

### a. Injury "Arising Solely Out Of" Advertising Activities

Discover acknowledges that the policy covers injuries injury arising "solely out of . . . advertising activities" and contends that RAKTL's allegations do claim such injury. (Pl. Mem. at 11-12.) According to Discover, the phrase "arising solely out of advertising activities" requires only a "causal connection" between the claimed injury and the advertising injury, and the "RAKTL Action complains of injuries directly caused by Discover's alleged infringement of patented telephonic advertising." (Pl. Mem. at 10-11.) National Union contends that Discover interprets this requirement too liberally, and that the underlying complaint does not attribute RAKTL's injuries solely to Discover's advertising activities. (Def. Mem. at 7-8.)

In construing the Policy's language that a covered injury must arise "solely out of . . . advertising activities" broadly, Discover cites to *Hooters of Augusta, Inc. v. American Globe Insurance Company*, 272 F. Supp. 2d 1365, 1374 (S.D. Ga. 2003). (Pl. Mem. at 11.) According to Discover, the *Hooters of Augusta* court required only a "causal connection" between the injury claimed and the advertising injury, and, Discover argues, the phrase "causal connection," generally speaking, has been interpreted broadly by Illinois courts. (*Id.*) Discover is correct that the insurance policy at issue in *Hooters of Augusta*, as here, required the insurer to indemnify the plaintiff-insured if the underlying injury was an advertising injury; the policy defined advertising injury as an injury "arising solely out of" the insured's advertising activities, which included the oral or written publication of material that violated a person's right to privacy. 272 F. Supp. 2d at 1371. Pursuant to the requirement that the advertising injury must "arise solely out of" the insured's advertising activities, the court did in fact state that the plaintiffs' advertising activities and the injury must be "causally connected." Significantly, however, the parties in *Hooters of Augusta* did not

17

dispute that Plaintiff's practice of sending unauthorized fax advertisements to businesses in Augusta constituted advertising activity. *Id.* at 1374. Because unauthorized faxes, which allegedly violated federal law, were the sole cause of the advertising injury claimed in the underlying lawsuit, the court had no reason to question whether the advertising injury arose "solely out of" the insured's advertising activities. *Id.* ("The advertising injury in the underlying case was caused by Hooters advertising activity . . . [a] nexus is [therefore] established between the advertising and the harm."); *see also Cent. Mut. Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1080 (N.D. Ill. 2003) (noting that the insurance policy at issue there did not contain "a more rigorous requirement" that the advertising injury "must have arisen solely out of the insured's offense committed in the course of advertising"). Thus, beyond establishing the obvious principle that, when the underlying injury is caused solely by activities that are indisputably related to advertising, the injury will have arisen solely out of advertising activities, *Hooters of Augusta* does not aid this court's interpretation of the Policy's requirement that RAKTL must be claiming or possibly claiming an injury arising solely out of Discover's advertising activities. The *Hooters of Augusta* court's use of the expression "causally connected" does not broaden that test.

The court here adheres to the established principle that, in the absence of ambiguity, the court must give the words of an insurance policy their plain and ordinary meaning. *See Am. Family Mut. Ins. Co.*, 369 Ill. App. 3d at 522, 860 N.E.2d at 441. The requirement that a covered advertising injury be an "injury arising solely out of . . . advertising activities" is not ambiguous: by its plain language, it simply requires that, to the extent Discover is alleged to have caused RAKTL an advertising injury, Discover's advertising activities must have been the sole cause of that injury.

Discover argues that the complaint's allegations and certain claims made in the patents in suit demonstrate that "the RAKTL Action complains of injuries directly caused by Discover's alleged infringement of patented telephonic advertising." (Pl. Mem. at 11.) According to Discover, RAKTL has not only alleged that it is injured by Discover's misappropriation of its patented technology, but

also that it is injured by Discover's use of the technology to "allegedly advertise and promote goods and services for sale." (*Id.* at 12.)[10] As National Union urges, however, RAKTL's allegations do not attribute its injuries solely to Discover's advertising activities and, in fact, make no reference to Discover's advertising activities. (Def. Mem. at 8.) Instead, RAKTL accuses Discover of "making, using, offering to sell, and/or selling [of] automated telephone systems, including without limitation the Discover Bank and Discover Card automated customer service systems." (RAKTL Amended Complaint ¶ 68.) These allegations bear no apparent connection to advertising activities. RAKTL complaint does describe these automated telephone systems as systems "that allow their customers to perform banking, credit card, and other functions over the telephone." (*Id.* ¶ 67.) There is no indication, however, that, as Discover contends, the phrase "other functions" refers to the ability of these systems to advertise and promote goods and services for sale. To be sure, the allegations need only fall potentially within the Policy's coverage, *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314-15 (citation omitted), and the absence of any express reference to advertising activities in RAKTL's complaint is not conclusive. *See Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (legal label that underlying plaintiff attaches to the insured's conduct is not determinative). But, even assuming in Discover's favor that the term "other functions" is related to the advertisement of goods and services, RAKTL's complaint does not appear to claim an advertising injury. In using the term "other functions," the RAKTL complaint is describing the functions that Discover's customers are able to perform using

---

[10]    Discover is correct that it "need not show that every patent claim asserted by RAKTL implicates Discover's advertising activities." (Discover Financial Services LLC's and Discover Banks Reply Memorandum of Law in Support of Their Motion for Partial Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment Regarding Defendant's Duty to Defend ("Pl. Reply") at 2.) Because the duty to defend is triggered even if only one theory of recovery potentially falls within the Policy's coverage, National Union's duty to defend is implicated if some of RAKTL's patent infringement claims might arise solely out of advertising activities such that RAKTL may have suffered an advertising injury. *See Valley Forge Ins. Co*, 223 Ill. 2d at 363, 860 N.E.2d at 315.

these automated telephone systems. It is not, however, the customer's conduct that RAKTL claims is infringing but Discover's "making, using, offering to sell, and/or selling" of these automated telephone systems. To the extent Discover argues that the RAKTL claims an injury arising from "Discover's actual use of such technology to allegedly advertise and promote goods and services for sale," the court finds that this representation mischaracterizes RAKTL's allegations. (Pl. Mem. at 12.) Nowhere does the RAKTL complaint refer to advertising activities, nor does the RAKTL complaint allege that Discover uses the relevant technology to advertise and promote goods and services for sale.

Discover sets forth a somewhat convoluted argument on this issue: Discover observes that the allegedly-infringed patents include claims relating to "advertising, promotion, and other specified styles of doing business." Because, according to Discover, a "claim of infringement succeeds only if each element of the patent claim is present in the accused method or process," then, "by definition, these claimed activities (or functions) must be present in Discover's accused methods and/or processes for there to be infringement." (Pl. Reply at 5.) As the court understands this argument, it is essentially that, because RAKTL's patents include some claims relating to advertising activities, RAKTL's injury must arise out of advertising activities. The court does not agree with Discover's interpretation of patent law and its implications for National Union's duty to defend.

Discover cites *Seal-Flex, Inc. v. Athletic Track and Court Construction*, for the proposition that a "claim of infringement succeeds only if each element of the patent claim is present in the accused method or process." 172 F.3d 836, 842 (Fed. Cir. 1999). The quotation is accurate, but Discover neglects to acknowledge that a patent can be comprised of many, even hundreds, of claims, and an action for patent infringement may concern just a single claim. RAKTL's own complaint, for example, alleged that Discover's conduct infringed "one or more claims" in the patents in suit. (RAKTL Am. Compl. ¶ 68.) Thus, the fact that an action for patent infringement can

succeed only if each element of a patent is present in the infringing product or process indicates nothing about whether RAKTL's patent infringement action concerns those claims within the allegedly-infringed-upon patents that relate to advertising or product promotion. Extrinsic evidence, which the court is willing to consider for the reasons explained below, confirms that RAKTL's alleged injury was not the result of the infringement of claims in the patents in suit that relate to advertising or product promotion.

As National Union correctly observes, the general rule in Illinois is that the court should decide whether an insurer has a duty to defend based only on "the allegations in the underlying complaint, considered in the context of the relevant policy provisions." *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 136, 761 N.E.2d 1214, 1221 (1st Dist. 2001) (internal quotations and citations omitted). Courts do, however, occasionally look beyond the complaint when, for example, such evidence will not impact "the underlying plaintiff's ability to pursue a theory of liability or resolve any issue critical to the insured's liability in the underlying litigation." *Id.* (internal quotations and citation omitted). Those circumstances exist here: Both parties point to evidence outside of the complaint, and this court's consideration of such evidence will not resolve any issues affecting the underlying litigation or otherwise affect those proceedings, which are pending in the Eastern District of Texas. The court also notes that the RAKTL complaint does not present significant details concerning the infringement claims. *Cf. id.* (declining to look beyond the complaint when determining the insurer's duty to defend because the complaints against the insured provide a plethora of facts and the consideration of extrinsic evidence would require the court to determine issues crucial to the underlying lawsuit). Thus, the court will look to the evidence outside of the complaint that both parties point to as relevant to National Union's duty to defend Discover.

As described above, Discover served an interrogatory upon RAKTL in which it asked whether RAKTL was alleging that any of certain functions of Discover's automated telephone systems contributed to Discover's alleged infringement: Discover identified its telephone systems'

ability to enable callers to (1) enroll in a "5% cash back" bonus promotion, (2) redeem travel or merchandise awards, (3) make balance transfers and automated payments, (4) try free for 30 days and/or purchase health, credit, or identity protection services, (5) pay credit card balances over the telephone with or without the assistance of an account manager, and/or (6) automatically apply funds from a designated bank account against their credit card balance contributed. (Discover Interrogatory One at 6, Ex. 5 to Pl. LR 56.1 Stmt.) RAKTL responded only that the functions identified by Discover in its interrogatory "are among the functions which are performed by Discover's automated telephone services and/or systems that infringe claims from one or more" of the patents in suit. (Pl. LR 56.1 Stmt. ¶ 23; Def. LR 56.1 Stmt. ¶ 24.) In Discover's view, RAKTL's response demonstrates that RAKTL is claiming an injury arising from functions of Discover's automated telephone systems that relate to advertising activities. The court has a different view of RAKTL's answer. RAKTL's answer acknowledges that the automated telephone systems at issue do perform the functions that Discover identified in its interrogatory, but that answer does not establish what Discover's interrogatory seeks: an admission that there is some connection between the identified functions and RAKTL's alleged injury.

More importantly, in answering Discover's interrogatory, RAKTL noted that its answer related only to claims it had asserted against Discover as identified in its May 16, 2006 and July 14, 2006 lists of representative claims. (Discover Interrogatory One at 4, General Objection E.) Those lists, submitted pursuant to court order, did not identify any claims related to advertising or to product promotion, which are the claims that Discover has identified in this action as relevant to National Union's duty to defend. (*See* 5/16/06 List of Representative Claims; 7/14/06 List of Additional Representative Claims.) Indeed, the examples of the representative claims quoted earlier, *see supra* Background Section B, illustrate that the claims identified by RAKTL are unrelated to advertising activities and that RAKTL's injury "could have occurred independent and irrespective of any advertising." *See Amazon.com Int'l Inc. v. Am. Dynasty Surplus Lines Ins. Co.*,

120 Wash. App. 610, 618, 85 P.3d 974 (2004) ("[T]he advertising activities must cause the injury, not merely expose it; an injury that could have occurred independent and irrespective of any advertising is not an advertising injury.")  As a result, the court is uncertain even that Discover can establish a "causal connection"—the standard Discover urges this court to adopt—between RAKTL's injury and advertising activities, not to mention the more rigorous requirement that RAKTL's injury "arises solely out of" Discover's advertising activities.

### b. Injury Resulting From Misappropriation of Advertising Ideas or Style of Doing Business

Even if the court concluded that RAKTL's alleged injury might arise solely out of advertising activities, the court cannot conclude that RAKTL's alleged injury might be a covered advertising injury unless it is also possibly due to Discover's misappropriation of RAKTL's advertising ideas or style of doing business.  The parties disagree over this issue, as well.  Citing cases from other jurisdictions, Discover asserts that "patent infringement may constitute an advertising injury arising out of the misappropriation of advertising ideas or style of doing business."  (Pl. Mem. at 13.)  The patent infringement claim in this case qualifies as an advertising injury, Discover contends, because RAKTL claims that Discover's automated phone systems infringe patented advertising ideas or a patented style of business.  (*Id.* at 14-15.)  In responding to this argument, National Union observes that patent infringement claims do not fall within the Policy's coverage, (Def. Mem. at 11), but the court will assume, for analytical purposes only, that a patent infringement claim could conceivably constitute an advertising injury within the terms of the Policy if those claims arise from the "misappropriation of an advertising ideas or style of doing business."  As explained below, the court nevertheless agrees with National Union that RAKTL's claims do not encompass the "misappropriation of advertising ideas or style of doing business."

### i. Misappropriation of Advertising Ideas

As Discover notes, the Policy itself does not define what constitutes the "misappropriation

of an advertising ideas or style of doing business." Consistent with the principle that the Policy should be construed in favor of the insured, the court adopts a broad definition of the term. Construed broadly, that expression refers to "the wrongful taking of the manner by which another advertises its goods or services" or the wrongful taking of "an idea about the solicitation of business." *See Amazon.com Int'l Inc.*, 120 Wash. App. at 616, 85 P.3d at 976; *see also Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1038 (N.D. Ill. 1998) (noting that the Seventh Circuit considers advertising to require the active solicitation of business and concluding that the broadest reading of "misappropriating advertising ideas is that the insured wrongfully took an idea about the solicitation of business"). Even given this broad definition, the court cannot conclude that RAKTL is alleging that Discover has misappropriated RAKTL's advertising ideas.

Discover's own authorities recognized that the misappropriation of advertising ideas must occur "'in the elements of the advertising itself—in its text, form, logo, or pictures—rather than in the product being advertised.'" *See Amazon.com Int'l Inc.*, 120 Wash. App. at 616, 85 P.3d at 977, citing *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994). Here, even construing the term "advertising" broadly to include oral statements in connection with the solicitation of business, as Discover urges, there is no basis from which the court can conclude that RAKTL's alleged injury is due to any misappropriation occurring in advertising elements. Using or selling automated telephone systems that have the ability to advertise goods or services or solicit business does not itself involve any elements of advertising. In other words, the mere fact that Discover's allegedly infringing telephone systems, like many other technologies, are capable of advertising goods or carrying promotional messages, does not transform the technology into an advertising idea. Moreover, as this court explained above, RAKTL's complaint is not clear that Discover's alleged patent infringement had anything to do with advertising or the solicitation of business. And extrinsic evidence, particularly RAKTL's lists of representative claims, confirms that RAKTL does not view its injury to be the result of Discover's infringement of those claims in the patents in suit

that address advertising, product promotion, or the solicitation of business. Accordingly, the court cannot conclude that RAKTL's alleged injury might be due to Discover's "wrongful taking of the manner by which another advertises its goods or services" or the wrongful taking of "an idea about the solicitation of business."

Discover's comparison of this case to *Amazon.com International* is not persuasive. In that case, Intouch Group, a software manufacturer, held patents for "interactive music preview technology" that, in relevant part, enabled customers to listen to samples of music products over the internet. *Id.* at 614, 85 P.3d at 975. Alleging that Amazon had misappropriated its software to market goods for sale to the public, Intouch Group sued Amazon for patent infringement. As in this case, Amazon sought declaratory relief that its excess insurance carrier had a duty to defend because the patent infringement claim was a covered advertising injury. *Id.* at 614, 85 P.3d at 975. The *Amazon.com* court, and others cited by Discover in its reply brief, held that "patent infringement may constitute an advertising injury *where an entity uses an advertising technique that is itself patented.*" *Id.* at 616, 85 P.3d at 977 (internal quotations and citations omitted) (emphasis in original). The *Amazon.com* court noted that, to be considered an advertising injury, the plaintiff's misappropriation of an advertising idea must have occurred in the elements of the advertising itself. *Id.* at 616, 85 P.3d at 977. And, because Intouch had alleged that its patented music preview technology was indeed an element of Amazon's advertising, the court concluded that Intouch had conceivably alleged the misappropriation of an idea concerning the solicitation of business and customers. *Id.* at 617, 85 P.3d at 977. As this court already pointed out, RAKTL's patent infringement claim does not relate to the advertising elements of Discover's automated telephone systems. Thus, the court cannot conclude that RAKTL's injury is due to Discover's use of a patented *advertising* technique.

The court finds the circumstances in *Heritage Mutual Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913 (S.D. Ind. 2000) more analogous. In that case, the plaintiff-insurer claimed

that it had no duty to defend Advanced Polymer Technology, Inc. ("APT") in a patent infringement action brought by Environ Products, Inc. As in this case, APT claimed that Environ's infringement complaint alleged advertising injury. *Id.* at 916-17. Environ had alleged that APT's manufacture and sale of certain piping products constituted infringement. *Id.* at 919. The court concluded that these allegations did not even potentially amount to a claim of misappropriation of advertising ideas or style of doing business: Environ's complaint did not "even hint at APT's wrongful taking of any Environ idea about how to solicit business or advertise the piping product." *Id.* at 926. The court characterized Environ's claim that APT unfairly competed with it by stealing its product and claiming it as its own as distinctly different from the taking of an advertising idea. *Id.* at 927. Likewise, here, Discover's alleged infringement on certain claims in RAKTL's patents unrelated to advertising is distinctly different from Discover's taking an advertising idea, despite the underlying invention's advertising capabilities.

### ii.     Misappropriation of Style of Doing Business

Based on its plain language, courts have accepted time and again that "misappropriation of a style of doing business" occurs when a party wrongfully takes a "company's comprehensive manner of operating its business." *Green Machine Corp. v. Zurich-American Ins. Group*, 313 F.3d 837, 840 (3d Cir. 2002) (citations omitted); *Winklevoss Consultants, Inc.*, 991 F. Supp. at 1039 (citing *St. Paul Fire & Marine Ins. Co. v. Adv. Interventional Sys., Inc.*, 824 F. Supp. 583, 585 (E.D. Va. 1993), *aff'd*, 21 F.3d 424 (4th Cir. 1994)). The misappropriation of a company's style of doing business is essentially synonymous with the misappropriation of its trade dress—"the manner in which a company promotes, presents, and markets its products to the public." *See Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1189 (11th Cir. 2002) (citing *St. Paul Fire & Marine Ins. Co.*, 824 F. Supp. at 585.) And, in the court's view, RAKTL's allegations that Discover misappropriated its patented automatic telephone system technology are unlikely to amount to a claim that Discover misappropriated RAKTL's *comprehensive* manner of operating its business.

*Green Machine Corp.*, 313 F.3d at 840 ("style of doing business" does not refer to a company's production or product but its "marketing approach"). In any case, Discover did not propose an interpretation of the phrase "style of doing business" nor does Discover develop, in any depth, an argument that Discover's alleged patent infringement involves misappropriating RAKTL's style of doing business. And, given the court's conclusions above regarding Discover's inability to establish that RAKTL's claims might amount to an advertising injury for other reasons, the court need not consider further whether Discover may have misappropriated RAKTL's style of doing business.

**c.    Whether Alleged Patent Infringement was Caused by an Occurrence**

Even if Discover could satisfy the court that RAKTL's injuries may arise solely out of advertising activities and are the result of the misappropriation of RAKTL's advertising ideas or RAKTL's style of doing business, National Union nevertheless would have no duty to defend unless Discover's alleged offense is an "occurrence" is within the terms of the Policy. In other words, unless Discover's alleged patent infringement was committed in the course of Discover's advertising its goods, products and services, RAKTL's allegations do not allege an "occurrence." Using a broad definition of advertising, which this court accepts, Discover argues that it is uncontroverted that it uses its automated telephone system to actively solicit business and therefore that the alleged patent infringement occurred in the course of Discover's advertising. (Pl. Reply at 13.) Discover also emphasizes, again, that because RAKTL has asserted patent claims "that contain advertising function limitations . . . [t]hese claims cannot be infringed without advertising activity." (*Id.*) National Union argues that Discover's telephone interface does not constitute advertising and that Discover's alleged patent infringement was not dependent on Discover's advertising. (Def. Mem. at 16.) Again, the court agrees with National Union.

Discover's allegedly infringing automated phone system may well have advertising and promotional capabilities. This by itself is not conclusive as to whether RAKTL's injury occurred during the course of advertising. A comparison to *Amazon.com*, a case initially cited by Discover,

27

illustrates this distinction. In that case, Amazon's website existed for the purpose of promoting products for sale, which undoubtedly amounted to advertising. 120 Wash. App. at 617. It was therefore implicit that the plaintiff in that case, Intouch, was alleging that Amazon used its allegedly infringing product—technology allowing customers to preview music available for purchase on its website—in the course of advertising. *Id.* Here, though Discover's automated telephone system is capable of promoting products, there are no allegations that Discover's automated telephone system exists for that purpose; rather, the allegations only specifically mention the telephone system's banking and credit card functions.

In that respect, this case is more analogous to *Delta Computer Corp. v. Frank*, 196 F.3d 589 (5th Cir. 1999). That case was also an insurance coverage dispute and, in the underlying litigation, Delta Computer Corporation had alleged that the defendant insureds had misappropriated its copyrighted software, which had the capability to generate long distance resale bills and also allowed for the inclusion of advertisement along with these bills. *Id.* at 590. The court concluded that the alleged injury did not occur during the course of advertising because, although "the software included a feature that allowed the bills generated to include advertisements, any advertising done through use of the software [was] incidental to [the plaintiff's] core complaint" of copyright infringement. *Id.* at 591. In this case, as in *Delta*, RAKTL could have complained of the same injury and asserted the same patent infringement claim, even if Discover never took advantage of the advertising capabilities of its automated telephone system. In short, the advertising capabilities of Discover's allegedly infringing telephone systems are incidental to RAKTL's complaint. *See id.* ("In the present case, DCC's copyright infringement claim stands on its own because even if the TEC parties had never discovered or used [the advertising feature] in the course of their billing activity, DCC could still have suffered the same injury and asserted the same software copyright infringement claim.")

Discover disagrees with this comparison and characterizes *Delta* as just another case that

"concerned a product's patent infringement, as opposed to an alleged misappropriation of an advertising idea or style of business." Here, Discover insists, the injury could not have occurred "but for Discover's advertising activities." (Pl. Reply at 14.) But the court's opinion thus far supports the view that this case, like *Delta,* is a case concerning a product's patent infringement. And, because the claims in the patent in suit with which RAKTL is concerned are not related to the advertising or promotional capabilities of Discover's automated telephone systems, the patent infringement—Discover's "making, using, offering to sell, and/or selling" of automated telephone systems—could have occurred without Discover's advertising activities. (RAKTL Amended Compl. ¶ 68.) In any case, even if it were *possible* that Discover's offense might be considered an "occurrence" within the meaning of the Policy, the court is convinced, for the reasons already explained, that it is not possible that Discover's alleged patent infringement qualifies as an advertising injury under the Policy. The court therefore concludes that National Union has no duty to defend Discover in the underlying RAKTL Action.[11]

### CONCLUSION

For the reasons stated above, the court grants National Union's motion for summary judgment (39) and denies Discover's motion for summary judgment (22).

ENTER:

Dated: September 26, 2007

REBECCA R. PALLMEYER
United States District Judge

---

[11] Because the court concludes that RAKTL's claims do not fall or possibly fall with the terms of the Policy, the court need not address National Union's remaining argument regarding the Policy's exclusions.